**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.


CHARLES D. SWANSON, Derivatively on Behalf of JANUS CAPITAL GROUP INC.,

             Plaintiff,

     vs.

RICHARD M. WEIL, STEVEN L. SCHEID, TIMOTHY ARMOUR, PAUL BALSER, G. ANDREW COX, JEFFREY DIERMEIER, J. RICHARD FREDERICKS, DEBORAH GATZEK, LAWRENCE KOCHARD, ROBERT PARRY, JOCK PATTON, GLENN SCHAFER, JONATHAN D. COLEMAN, GREGORY A. FROST, JAMES P. GOFF, and, R. GIBSON SMITH,

             Defendants,

     -and-

JANUS CAPITAL GROUP INC.,


Nominal Defendant.


**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**


     1.      This is a shareholder derivative action on behalf of nominal party Janus Capital

Group Inc. ("Janus" or the "Company), seeking relief against Janus' board of directors, its top

executives (collectively, the "Janus Defendants") relating to breaches of fiduciary duty in

connection with Janus' Board of Directors' (the "Janus Board") approval of Janus' 2010

executive compensation and for violation of the Securities Exchange Act of 1934 (the "Exchange

Act") for making false and misleading statements in the Company's Definitive Proxy Statement

on Schedule 14A for its 2011 Annual Meeting ("2011 Proxy Statement"). This action also seeks

to recover for the unjust enrichment received by the Company's executive officers for their 2010 compensation payments which were unwarranted in light of Janus' dismal 2010 financial performance.

## INTRODUCTION

2.      On July 21, 2010, the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act") was signed into law.  The Dodd-Frank Act was enacted in response to the worst financial crisis since the Great Depression in an attempt to restore responsibility and accountability in our financial system.

3.      Section 951 of the Dodd-Frank Act requires that companies include a resolution in their proxy statements asking shareholders to approve, in a nonbinding vote, the compensation of their executive officers, as disclosed under Item 402 of Regulation S-K (the "say-on-pay" vote).  A separate resolution is also required to determine whether this say-on-pay vote takes place every one, two, or three years (the "say-on-frequency" vote).

4.      Say-on-pay was enacted because executive compensation has become decoupled from financial performance.  As the Senate committee stated, "[t]he economic crisis revealed instances in which corporate executives received very high compensation despite the very poor performance by their firms."[1]

---

[1] S. REP. 111-176, S. Rep. No. 176, 111TH Cong., 2ND Sess. 2010, 2010 WL 1796592, at p. 133

5.      Say-on-pay is intended to "serve as a direct referendum on the decisions of the compensation committee" and allow shareholders and board members "to stand up to excessively demanding officers or compensation consultants."[2]

6.      On October 18, 2010, the Securities and Exchange Commission ("SEC") issued proposed rules under the Exchange Act to implement Section 951 of the Dodd-Frank Act and on January 25, 2011, the SEC adopted the rule changes to implement the provisions of the Dodd-Frank Act relating to shareholder approval of executive compensation.[3]

7.      On March 16, 2011, Janus issued its 2011 Proxy Statement for its Annual Meeting scheduled for April 28, 2011, at which it was to hold its first "say-on-pay" vote.

8.      In the 2011 Proxy Statement, the Janus Board recommended that the shareholders vote "for" approval of the 2010 executive compensation.

9.      Despite the Board's recommendation, on April 28, 2011, Janus' shareholders rejected the Company's 2010 executive compensation. Among the shares that voted, approximately 58% of Janus' shares voted against approval of the 2010 executive compensation.

10.     This placed Janus as one of only a handful of companies to fail to receive majority support for its executive compensation under the Dodd-Frank Act "say-on-pay" provision.  Of the more than 2300 companies that have held say-on-pay votes since the enactment of the Dodd-Frank Act, only about 38 other companies, or 1.5%, have failed to receive support for their executive compensation.

---

[2] *Id.*

[3] *See* Release No. 33-9178 (January 25, 2011) (the "Adopting Release").  Section 951 of the Dodd-Frank Act added Section 14A to the "Exchange Act".

3

11.     The 2010 executive compensation packages rejected by the shareholders award the Company's executive approximately $41 million, yet at the same time the Company's performance was dismal.  In fact, an article in the New York Times criticized Janus' executive compensation policies, and described how Janus "topped the list" of companies that overpaid executives irrespective of performance.

12.     The Board's approval of the 2010 executive compensation violated its own pay-for-performance policy and caused Janus' 2011 Proxy Statement to be materially false and misleading when made because the Janus Board failed to disclose that the 2010 executive compensation had no meaningful relationship to the Company's performance.

13.     Say-on-pay is intended to promote increased accountability of board members and corporate management and as such, the Janus Board is not entitled to business judgment related to the 2010 executive compensation as the adverse shareholder vote is evidence that rebuts the presumption.

14.     Janus has been damaged by the Janus Board's failure to respect the business judgment of the shareholders in breach of their duty of loyalty.  Plaintiff seeks relief for Janus Board's disloyalty, its CEO and top executives' unjust enrichment, and its compensation consultant's aiding and abetting breaches of fiduciary duty and breach of contract. The false and misleading Proxy Statement also tainted the stockholder vote for the directors in violation of Section 14 of the Exchange Act.

## JURISDICTION AND VENUE

15.     Jurisdiction is founded upon federal question jurisdiction, pursuant to § 27 of the Exchange Act, as amended, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.  This Court has

supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

16.     Venue is proper in this district as each of the office and director defendants is an officer or director of the nominal Defendant, a Delaware corporation, and upon information and belief defendants have engaged in numerous activities and conducted business in this district and/or which had an effect in this district.

## THE PARTIES

17.     Plaintiff Charles D. Swanson is a shareholder of Janus and has been continuously throughout the relevant period.  Plaintiff is a citizen of the State of Maine.  *See* Exhibit A (Verification).

18.     Nominal party Janus is a Delaware corporation with its principal place of business located at 151 Detroit Street, Denver Colorado 80206.

19.     Defendant Richard M. Weil ("Weil") has served as Chief Executive Officer and a director of the Company since February 1, 2010. Despite Janus' poor performance in 2010, Weil's compensation totaled $20,337,868 in 2010.  This has resulted in Weil's unjust enrichment.  Weil also falsely represented to Janus' shareholders in Janus' 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.

20.     Defendant Steven L. Scheid ("Scheid") has been Chairman of the Board of the Company since January 2004 and a director of the Company since December 2002. Scheid

5

falsely represented to Janus' shareholders in Janus' 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.

21.    Defendant Timothy Armour ("Armour") has been a director of the Company since March 2008 and served as Interim Chief Executive Officer of the Company from July 2009 until February 1, 2010. Armour served as a member of the Company's Compensation Committee during the relevant period.  Armour falsely represented to Janus' shareholders in Janus' 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.

22.    Defendant Paul Balser ("Balser") has been a director of the Company since June 2000 and has served as a member of the Company's Compensation Committee during the relevant period.  Balser falsely represented to Janus' shareholders in Janus' 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.

23.    Defendant G. Andrew Cox ("Cox") has been a director of the Company since October 2002 and has served as a member of the Company's Compensation Committee during the relevant period.  Cox falsely represented to Janus' shareholders in Janus' 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.

24.    Defendant Jeffrey Diermeier ("Diermeier") has been a director of the Company since March 2008.  Dermeier falsely represented to Janus' shareholders in Janus' 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.

25.     Defendant J. Richard Fredericks ("Fredericks") has been a director of the Company since October 2006.  Fredericks falsely represented to Janus' shareholders in Janus' 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.

26.     Defendant Deborah Gatzek ("Gatzek") has been a director of the Company since March 2004.  Gatzek falsely represented to Janus' shareholders in Janus' 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.

27.     Defendant Lawrence Kochard ("Kochard") has been a director of the Company since March 2008 and has served as a member of the Company's Compensation Committee during the relevant period.  Kochard falsely represented to Janus' shareholders in Janus' 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.

28.     Defendant Robert Parry ("Parry") has been a director of the Company since March 2005.  Parry falsely represented to Janus' shareholders in Janus' 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.

29.     Defendant Jock Patton ("Patton") has been a director of the Company since March 2007 and has served as a member of the Company's Compensation Committee during the relevant period. Patton falsely represented to Janus' shareholders in Janus' 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.

7

30.     Defendant Glenn Schafer ("Schafer") has been a director of the Company since December 2007.  Schafer falsely represented to Janus' shareholders in Janus' 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.

31.     Defendants Weil, Scheid, Armour, Balser, Cox, Diermeier, Fredericks, Gatzek, Kochard, Parry, Patton, Schafer are hereinafter referred to as the "Director Defendants".

32.     Defendant Jonathan D. Coleman ("Coleman") has served as Executive Vice President and Co-Chief Investment Officer of the Company, and its predecessor company, since November 2006.  Despite Janus' poor performance in 2010, Coleman's compensation totaled $ 6,215,319 in 2010.  This has resulted in Coleman's unjust enrichment.

33.     Defendant Gregory A. Frost ("Frost") has served as Executive Vice President of the Company since January 2008, Chief Financial Officer, since March 2007 and Treasurer since September 2009. Despite Janus' poor performance in 2010, Frost's compensation totaled $1,293,087 in 2010.  This has resulted in Frost's unjust enrichment.

34.     Defendant James P. Goff ("Goff") has served as Director of Research of the Company, and its predecessor company, since January 2002. Goff also currently serves as portfolio manager of the Janus Global Research Fund (since February 2005), the Janus Research Fund (since February 2007) and the Janus International Research Fund (since July 2010). Despite Janus' poor performance in 2010, Goff's compensation totaled $5,154,353 in 2010.  This has resulted in Goff's unjust enrichment.

35.     Defendant R. Gibson Smith ("Smith") has served as Executive Vice President and Co-CIO of the Company, and its predecessor company, since November 2006.  Despite Janus'

poor performance in 2010, Smith's compensation totaled $7,728,687 in 2010.  This has resulted

in Smith's unjust enrichment.

36.     Defendants Weil, Coleman, Frost, Goff, and Smith are hereinafter referred to

collectively as the "Executive Defendants".

## FACTUAL ALLEGATIONS

37.     Janus and its subsidiaries provide investment management, administration,

distribution and related services to individual and institutional investors through mutual funds,

other pooled investment vehicles, separate accounts and subadvised relationships in both

domestic and international markets.

38.     On January 4, 2010, the first trading day of 2010, the Company's stock price

opened at $13.61 per share.  By December 31, 2010, it closed at $12.97 per share, a 4.7%

decrease.  Further, the price of Janus stock has continued to perform poorly, closing at $6.49 on

August 10, 2011.

39.     This poor performance is even more troubling when compared to the Dow Jones

Industrial Average, whose price increased by approximately 11% in 2010.

40.     Indeed, a recent article dated July 13, 2011 on seekignalpha.com titled "Janus

Woes Highlight Investor Frustration With Active Funds" highlighted Janus' recent woes, noting

that investors have taken out over $18.5 billion from Janus mutual funds over the past seven

quarters. As stated in the article:

> Some of the most celebrated mutual-fund firms and managers during the go-go
> 1990s in stocks have been felled by the credit crisis as investors grow increasingly
> disillusioned with most active managers' failure to beat their benchmarks after
> fees and taxes.

* * *

This week, Janus (NYSE: JNS) shares have been under pressure on reports investors pulled more money from the company's investment products last month. The firm established a gun-slinging reputation in the tech bubble with its rock-star managers and concentrated stock portfolios. But the dot-com bust and the credit crisis were tough on many Janus funds.

Investment managers, led by Janus, lost assets in June as investors continued to flee funds, reports Christopher Condon for Bloomberg. Janus shares are down nearly 30% this year.

"It was a terrible month for the industry, but given they are mostly in equities and the relative poor performance of their funds, Janus will look worse than the others," commented Jason Weyeneth, an analyst from Sterne, Agee & Leach, in the report.

Investors pulled $954 million from the 20 largest Janus stock and bond mutual funds, which account for 55% of total assets under management, in June, according to Bloomberg. In total, investors took out $18.5 billion over the past seven quarters and over $2 billion from mutual funds in the last quarter, the report said.

41.     Despite the Company's poor performance in 2010, the Janus Board, in violation

of its own executive compensation policy, authorized a substantial compensation to their

executive officers, and in particular to their newly appointed CEO, defendant Weil.

42.     Weil was appointed to CEO effective February 1, 2010. He received an initial

grant of $10,000,000 in restricted stock as an initial sign-on incentive, and received total

compensation of $20,337,868 in 2010.

43.     The Company's other named executive officers made the following amounts for

2010.

| Name and Principal | Year | Salary ($) | Restricted Stock | Option Awards | Non-Equity Incentive Plan | All Other Compensation | Total ($) |
|---|---|---|---|---|---|---|---|

| Position | Awards ($) | ($) | Compensation ($) | ($) | | |
|---|---|---|---|---|---|---|
| Gregory A. Frost, | 2010 $400,000 $ | 100,095 $100,102 $ | 660,000 $ | | 32,890 $1,293,087 |
| Jonathan D. Coleman, | 2010 $500,000 $ | 605,822 $605,818 $ | 4,465,785 $ | | 37,894 $6,215,319 |
| R. Gibson Smith, | 2010 $500,000 $ | 623,551 $623,552 $ | 5,943,835 $ | | 37,749 $7,728,687 |
| James P. Goff, | 2010 $500,000 $ | 507,588 $507,584 $ | 3,611,207 $ | | 27,974 $5,154,353 |

44.     The amount of executive compensation received by the Company's executive officers when analyzed in relation to Janus' dismal financial performance in 2010 evidences the lack of a meaningful relationship between the 2010 executive compensation and Janus' corporate performance.

45.     In fact, an article published in the *New York Times* on June 18, 2011 titled "Paychecks as Big as Tajikistan") stated that Janus "topped the list" of companies that overpaid executives irrespective of performance. Specifically, the article stated that among the 483 companies analyzed, only eleven "gave top executives a combined pay package amounting to 1 percent or more of the companies' average market value over the course of the year," with Janus "topp[ing] the list," paying almost $41 million for five executives, which "accounted for 1.95 percent of the company's average market value over 2010."  As stated in the article:

> WHEN does big become excessive? If the question involves executive pay, the answer is "often."
>
> But despite the reams of figures about pay in any given year, shareholders often have to struggle to put those numbers into perspective. Companies typically hold

up pay from previous years as a benchmark, but just how *this* paycheck stacks up against, say, a company's earnings or stock market performance is rarely laid out. Investors can run the numbers themselves, of course, but it's a pretty laborious process. As a result, pay for most public companies' top executives exists in a sort of vacuum, as far as investors are concerned. Shareholders know they pay a lot for the hired help, but a lot compared with what?

Answers to that question come fast and furious in a recent, immensely detailed report in The Analyst's Accounting Observer, a publication of R. G. Associates, an independent research firm in Baltimore. Jack Ciesielski, the firm's president, and his colleague Melissa Herboldsheimer have examined proxy statements and financial filings for the companies in the Standard & Poor's 500-stock index. In a report titled "S.& P. 500 Executive Pay: Bigger Than ...Whatever You Think It Is," they compare senior executives' pay with other corporate costs and measures. It's an enlightening, if enraging, exercise. And it provides the perspective that shareholders desperately need, particularly now that they are being asked to vote on corporate pay practices.

Let's begin with the view from 30,000 feet. Total executive pay increased by 13.9 percent in 2010 among the 483 companies where data was available for the analysis. The total pay for those companies' 2,591 named executives, before taxes, was $14.3 billion.

That's some pile of pay, right? But Mr. Ciesielski puts it into perspective by noting that the total is almost equal to the gross domestic product of Tajikistan, which has a population of more than 7 million.

Warming to his subject, Mr. Ciesielski also determined that 158 companies paid more in cash compensation to their top guys and gals last year than they paid in audit fees to their accounting firms. Thirty-two companies paid their top executives more in 2010 than they paid in cash income taxes.

The report also blows a hole in the argument that stock grants to executives align the interests of managers with those of shareholders. The report calculated that at 179 companies in the study, the average value of stockholders' stakes fell between 2008 and 2010 while the top executives at those companies received raises. The report really gets meaty when it compares executive pay with items like research and development costs, and earnings per share.

The report, for instance, compared earnings per share with cash pay — just salary and bonus, if there is one. It identified 24 companies where cash compensation last year amounted to 2 percent or more of the company's net income from continuing operations.

12

* * *

*Finally, there's the comparison of executive pay with market capitalization. As Mr. Ciesielski noted, this calculation provides the biggest shock value.*

*Eleven companies analyzed in the report gave top executives a combined pay package amounting to 1 percent or more of the companies' average market value over the course of the year. The Janus Capital Group, the mutual fund concern, topped the list, with pay totaling almost $41 million for five executives. This accounted for 1.95 percent of the company's average market value over 2010.*

*"To earn their keep," the report said, "managers would have to create stock market value in the full amount of their pay." The executives at Janus failed to increase value in 2010, when the stock closed out the year roughly where it had begun it. This year, the company's shares are down almost 30 percent. Janus declined to comment.*

Mr. Ciesielski says he believes that shareholders need more context when it comes to pay practices — and that rule makers should improve pay reports. "The disclosures really are not sufficient to get people fired up," he said in an interview last week, "unless they add up the compensation and find out how it relates to other things."

46.     Another article dated May 30, 2011 in Pensions & Investments titled "Janus CEO Weil faces uphill climb in 2nd year on job" quoted Weil as recognizing that Janus has failed to deliver. As stated in the article:

"We know that we haven't yet delivered the results that we need to deliver," Mr. Weil said in an interview, noting that turning around the money manager will be a multiyear process.

The article noted that Janus' $173.5 billion in assets under management as of March 31 were little more than half its $321 billion peak in the first quarter of 2000.  The article further described how the performance of Janus' largest mutual funds has been very poor, stating:

Performance has not improved, however, for Janus' traditional domestic growth equity funds. Seven of Janus' 10 largest mutual funds were in the bottom quartile for the year ended April 11, according to a May 17 J.P. Morgan Securities report.

13

47.     On March 16, 2011, Janus filed its 2011 Proxy Statement in which the Janus Board unanimously recommended the approval of the 2010 executive compensation in Janus' first Dodd-Frank mandated advisory "say on pay" falsely stating its compensation committee emphasized "pay for performance."  The Proxy stated:

**Proposal No. 3: Non-binding Advisory Vote Related to Executive Compensation.**

Pursuant to regulations recently adopted by the SEC and as required by the Dodd-Frank Wall Street Reform and Consumer Protection Act, our shareholders are being provided with the opportunity to consider the compensation of our Company's named executive officers ("say-on-pay vote") by voting for or against the resolution below. As provided for in the regulations, the vote is considered advisory and non-binding on the Company and its Board of Directors. Although it is non-binding under the regulations, the Board and its Compensation Committee value the opinions that our shareholders express in their votes.

**RESOLVED**, that the shareholders approve the compensation of the Company's named executive officers, as disclosed in the Compensation Discussion and Analysis, the compensation tables, and any related material disclosed in this Proxy Statement.

Approval of Proposal No. 3, which begins on page 71, requires the affirmative vote of a majority of the shares present or represented by proxy at the Annual Meeting and entitled to vote on this proposal.

***THE BOARD OF DIRECTORS RECOMMENDS THAT THE SHAREHOLDERS VOTE "FOR" PROPOSAL NO. 3, APPROVING A NON-BINDING ADVISORY VOTE ON OUR NAMED EXECUTIVE OFFICERS' COMPENSATION.***

48.     The Janus Board falsely represented to Janus' shareholders that the Company's executive compensation practices are firmly rooted in a pay-for-performance philosophy.  As stated in the Company's 2011 Proxy Statement, its executive compensation programs are supposedly designed "attract, motivate and retain highly qualified executives and other key talent

14

by offering fully competitive total compensation opportunities" to "reward strong performance against financial and strategic (non-financial) objectives…," and "promote a performance-based culture with individual compensation levels varying significantly from year to year based on changes in business and individual performance assessed quantitatively and qualitatively."

49.     Despite the Janus Board's unanimous recommendation "for" approval, on April 28, 2011, Janus' shareholders rejected the Company's 2010 executive compensation plan. Among the shareholders that cast a vote, 82,667,210 shares voted against approval of the executive compensation, while only 58,890,647. Accordingly, among the votes cast, approximately 58% voted against approval, placing Janus in the minority of companies to fail to obtain majority support from stockholders for its executive compensation.

50.     With the adverse shareholder vote, the presumption of business judgment surrounding the Janus Board's 2010 executive compensation decision has been rebutted.

51.     Although the adverse shareholder vote rebuts the presumption that the Janus Board' s 2010 executive compensation decisions were the product of a valid exercise of business judgment, the Janus Board has not rescinded the excessive 2010 executive compensation, nor has it publicly indicated any intention to do so. This result ignores the will of Janus' shareholders.

52.     In fact, as noted in an article on Reuters.com titled "Analysis: Janus faces pay pressure after shareholder vote," Janus has often voted against pay proposals at companies it its portfolio, making the Board's actions within its own company particularly hypocritical. As stated in the article:

BOSTON (Reuters) - When it comes to executive pay at mutual fund manager Janus Capital Group (JNS.N: Quote, Profile, Research, Stock Buzz), the shoe is on the other foot.

Janus, which often votes against pay proposals at companies in its portfolio, saw its own shareholders reject the compensation its board had set for top executives at the Denver asset manager.

The vote last month was only advisory, so the board can ignore it, but it does signal investor dissatisfaction.

Nearly two dozen other companies have gotten similar feedback this proxy season. But for Janus, the vote was particularly stinging; by some measures, it is more aggressive than other big asset managers on the subject of executive pay.

If Janus fails to change its own pay now, "the risk is they would be viewed as being hypocritical," said Jeff Marshall, co-founder of Moxyvote.com, which tracks corporate governance issues.

The article further describes Janus' poor performance and its unreasonable compensation

packages, particularly to the Company's CEO, defendant Weil:

Janus faces trouble at home. Its shares have fallen 22 percent so far this year, the most of peers, as it has reported continued outflows from investors concerned about the mixed performance of some of its equity funds.

The company hired former Pimco executive Richard Weil as chief executive officer to turn things around. He arrived on February 1, 2010, and received $20.3 million for that year, including a signing bonus of $10 million in restricted stock vesting over three years, according to Janus' proxy filing.

* * *

SHAREHOLDER SETBACK

Still, stockholders were not happy. In the advisory vote at the company's annual meeting on April 28, 82.7 million shares were cast against the executive pay proposal, and 59.9 million shares were voted for it. Those results were not a surprise after ISS, the influential advisory unit of MSCI Inc (MSCI.N: Quote, Profile, Research, Stock Buzz), recommended an "against" vote.

In a report, ISS said Weil's new-hire package "appears overly generous for a newly appointed CEO" and that the $10 million was "unacceptable to shareholders due to the lack of disclosure and rationale provided" in the proxy.

Janus board members either did not respond to requests for comment or referred questions to a company spokesman. In the proxy, Janus said a compensation redesign was under way.

53.     Janus has been injured by the Board's approval of the 2010 executive compensation and Janus' executives have been unjustly enriched by the 2010 executive compensation they received.

54.     Plaintiff seeks to recover damages and other relief for Janus against the Janus Board members for their breaches of fiduciary duties and Janus' CEO and top executives for their unjust enrichment. Moreover, by distributing a false and misleading Proxy Statement, the Director Defendants tainted the stockholder vote for the election of directors in violation of Section 14 of the Exchange Act.

## DIRECTORS' AND OFFICERS' FIDUCIARY DUTIES

55.     As directors and officers of Janus, the Janus Defendants owed fiduciary duties to Janus.  These fiduciary duties include duties of care, loyalty, good faith, and candor.

56.     Defendants' fiduciary duty of loyalty prohibits them from acting in bad faith as well as from making materially false and misleading statements to Janus' shareholders about, among other things, its executive compensation practices and purported pay-for-performance executive compensation policy.

57.     Defendants, because of their positions of control and authority as directors and/or officers of Janus, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

17

58.     Because of their executive positions and access to Janus' internal information, Defendants knew or should have known that the Company's 2010 executive compensation payments to their executive officers violated the Janus' pay-for-performance executive compensation philosophy as outlined in the Company's 2011 Proxy Statement.

59.     The overwhelming rejection of the 2010 executive compensation strongly evidences that the compensation is not in the best interest of Janus or its shareholders

60.     Instead, the decision to approve and recommend the 2010 executive compensation was unreasonable and not the product of business judgment.

61.     Defendants also knew or should have known that the 2011 Proxy Statement was false and misleading when made.  The 2011 Proxy Statement omitted to disclose that the 2010 executive compensation violated Janus' pay-for-performance policy and was not the product of a valid exercise of business judgment.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

62.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully herein.

63.     Plaintiff brings this action derivatively on behalf of Janus to redress injuries suffered, and yet to be suffered, by the Company as a direct and proximate result of defendants' misconduct.  Plaintiff is a shareholder of Janus and will adequately represent the interests of the Company in this litigation.

64.     A pre-suit demand upon the Janus Board would have been a useless and futile action, and therefore, excused.

18

65.     Demand is excused as each of the directors has been named as a defendant in this action and was a director when the excessive 2010 executive compensation was issued and then rejected by the Janus shareholders, and each director participated in issuing materially false and misleading statements in the Company's 2011 Proxy Statement.

66.     Demand is excused because each of the directors is interested in the outcome of this litigation having approved the 2010 executive compensation and recommended the 2010 executive compensation "for" approval by the shareholders in violation of Janus' pay-for-performance policy and in breach the their fiduciary duty.  Consequently, the directors face a substantial likelihood of liability and are interested in the outcome of this action.

67.     Demand is excused because the entire Janus Board is interested in the outcome of this litigation as each of the directors is liable for violation of Section 14(a) of the Securities Act of 1934 by making false and misleading statements in the Company's 2011 Proxy Statement relating to Janus pay-for-performance policy.

68.     Demand is excused because the directors are not entitled to business judgment protection for their decisions relating to the 2010 executive compensation as the adverse shareholder vote rebuts that presumption.

69.     Demand is excused because the directors have exhibited antipathy towards the relief sought herein by first recommending approval of the 2010 executive compensation and then thwarting the will of the shareholders by failing to rescind the2010 executive compensation after the shareholders overwhelming voted against it.

**COUNT I**
**VIOLATION OF § 14(a) OF THE EXCHANGE ACT**
**(Against the Director Defendants)**

70.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully herein.

71.     The Director Defendants issued, caused to be issued, and participated in the issuance of materially false and misleading statements contained in the Company's 2011 Proxy relating to the Company's pay-for-performance policy.

72.     By reason of the conduct alleged herein, each Director Defendants violated Section 14(a) of the Securities Exchange Act of 1934.

73.     As a result, Janus and its shareholders have been substantially damaged.

**COUNT II**
**BREACH OF FIDUCARY DUTY OF LOYALTY**
**(Against the Director Defendants)**

74.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully herein.

75.     By reason of their positions as directors of the Company, and because of their ability to control the business, corporate, and financial affairs of the Company, the Director Defendants owed Janus the utmost fiduciary duty.

76.     Each of these defendants breached their fiduciary duty by approving and failing to rescind the 2010 executive compensation, concealing that the 2010 executive compensation violated the Board's purported pay-for-performance executive compensation policy and participating in issuing materially false and misleading statements in the Company's 2011 Proxy Statement.

20

77.     As a result, Janus and its shareholders have been substantially damaged.

## COUNT III
## UNJUST ENRICHMENT
### (Against the Executive Defendants)

78.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully herein.

79.     The 2010 compensation payments to Janus' CEO and top executives violated Janus' pay-for-performance policy, and were unwarranted and undeserved in light of Janus' dismal 2010 financial performance.

80.     By reason of the foregoing, the Executive Defendants have been unjustly enriched. As a result, Janus and its shareholders have been substantially damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     A determination that this action is a proper derivative action maintainable under the law and that demand is excused;

B.     Against the Defendants and in favor of Janus for the amount of damages sustained by the Company as a result of the breaches of fiduciary duty by the Defendants;

C.     Injunctive and/or other equitable relief as necessary or permitted by law, equity and the statutory provisions sued hereunder, including disgorgement, attachment, impoundment, imposition of a constructive trust on or otherwise restricting the disposition/exercise of improvidently awarded 2010 executive compensation;

21

D.  Directing Janus to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein;

E.  Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

F.  Granting Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: August 16, 2011          CHARLES LILLEY & ASSOCIATES, P.C.

s/Charles W. Lilley_____
Charles W. Lilley
Karen Cody-Hopkins, Of Counsel
730 17th Street, Suite 670
Denver, Colorado 80202
Telephone: (303) 293-9800
Facsimile: (303) 298-8975
Email: clilley@lilleylaw.com

Attorneys for Plaintiff

*Plaintiff's address:*
*Charles D. Swanson*
*703 Wolfe Neck, Rd.*
*Freeport, ME 04032*

*Of Counsel:*
Levi & Korsinksy, LLP
Eduard Korsinksy
Michael H. Rosner, Esq.
30 Broad Street, 15th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

22