**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-02142-CMA-KLM

CHARLES D. SWANSON,
Derivatively on Behalf of JANUS CAPITAL GROUP INC.,

                Plaintiff,

      vs.

RICHARD M. WEIL, STEVEN L. SCHEID, TIMOTHY K. ARMOUR,
PAUL F. BALSER, G. ANDREW COX, JEFFREY J. DIERMEIER, J.
RICHARD FREDERICKS, DEBORAH R. GATZEK, LAWRENCE E.
KOCHARD, ROBERT T. PARRY, JOCK PATTON, GLENN S.
SCHAFER, JONATHAN D. COLEMAN, GREGORY A. FROST,
JAMES P. GOFF, and, R. GIBSON SMITH

                Defendants,

      -and-

JANUS CAPITAL GROUP INC.,

                Nominal Defendant.

**<u>AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT</u>**

    1.      This is a verified shareholder derivative action on behalf of nominal defendant

Janus Capital Group Inc. ("Janus" or the "Company), seeking relief against Janus's board of

directors ("the Board"), and certain of its top executives (collectively, the "Individual

Defendants" and collectively with Janus, the "Defendants").  This action seeks to hold

Defendants liable for their breaches of fiduciary duty and unjust enrichment in connection with

the Janus Board's approval of, and Janus executive officers' receipt of, the Board-approved 2010

executive compensation payments received from January 1, 2010 to the present (the "Relevant

Period") -- which were excessive and unwarranted in light of Janus's dismal 2010 financial

performance -- and for their violation of the Securities Exchange Act of 1934 (the "Exchange Act") for making false and misleading statements in the Company's Definitive Proxy Statement on Schedule 14A ("2011 Proxy Statement").

## **INTRODUCTION**

2.      This action arises from Defendants' unwarranted and excessive spending of Company funds on executive compensation in direct contradiction to the Company's stated pay-for-performance policy, which requires Janus to "provide a strong and direct link between pay and both Company and individual performance."

3.      During the Relevant Period, the Board authorized the payment of a $10 million "initial sign-on incentive" to the Company's new Chief Executive Officer ("CEO"), defendant Richard M. Weil ("Weil"), before he even performed a single act of duty, representing approximately 50% of his total annual compensation of $20 million.  Further, the $50 million awarded to Janus executives in 2010 is equal to 30% of the company's net income.

4.      During 2010, under the leadership of Weil (and the other executive officers), Janus's stock price decreased by approximately 7% despite the fact that the Dow Jones Industrial Average (the "Dow"), a basic indicator of overall stock performance, actually increased by almost 9%.  Thus, under the leadership of the newly-wealthy defendant Weil, the price of the Company's stock lagged nearly 16% behind the Dow.  Further, the price of the Company's stock still has not recovered and is currently down more than 50% from 2009.

5.      Accordingly, given the relatively precipitous drop in the Company's share price during 2010, the Board's decision to *increase* total 2010 executive compensation was unreasonable, disloyal, and not made in good faith.  By increasing total 2010 executive

2

compensation, the Board violated Janus's pay-for-performance executive compensation policy. Thus, there is reason to doubt that (i) the Board complied with its fiduciary duties and (ii) its decisions are presumptively protected by the business judgment rule.

6.     On March 16, 2011, Janus issued its 2011 Proxy Statement setting the annual shareholder meeting for April 28, 2011, at which it was to hold its first "say-on-pay" vote.  In the 2011 Proxy Statement, the Janus Board recommended that the shareholders vote "for" approval of the 2010 executive compensation.

7.     On April 29, 2011, Janus stockholders voted on the proposed 2010 compensation for the Company's senior officers, and an overwhelming majority *rejected* the Board's 2010 recommendation. In particular, only 59,890,647 votes were cast in favor of the compensation while 82,667,210 voted against it with 6,718,257 abstentions.  Accordingly, only 40% of stockholders voted in favor of 2010 executive compensation as proposed, approved, and recommended to shareholders by the Janus Board.  The 2010 executive compensation packages rejected by the shareholders awarded the Company's executives approximately $41 million, yet at the same time the Company's performance was dismal.

8.     This placed Janus as one of only a handful of companies to fail to receive majority support for its executive compensation under the Dodd-Frank Act "say-on-pay" provision.  Of the more than 2,300 companies that have held say-on-pay votes since the enactment of the Dodd-Frank Act, only about 38 other companies, or 1.5%, have failed to receive support for their executive compensation.

9.     The Board's approval of the 2010 executive compensation violated its own pay-for-performance policy and caused Janus's 2011 Proxy Statement to be materially false and

misleading when made because the Janus Board failed to disclose that the 2010 executive compensation had no meaningful relationship to the Company's performance.

10.    Despite the adverse shareholder vote, which occurred over six months ago, the Board has not rescinded the excessive 2010 executive compensation, nor has the Board indicated any intention to do so.

11.    This Board's utter disregard for the Company's financial performance in making compensation decisions for 2010 did not go unnoticed by the press and corporate governance gurus.  For instance, a May 25, 2011 *Reuters* article entitled "Analysis: Janus Faces Pay Pressure After Shareholder Vote" quoted co-founder of the corporate governance issue-tracking Moxyvote.com, Jeff Marshall, stating, "If Janus fails to change its own pay now 'the risk is they would be viewed as being hypocritical.'" Further, the *Reuters* article highlighted the fact that "[s]ecurities fillings show Janus funds voted last year *against* management pay proposals at companies that include banks Wells Fargo & Co and Comerica Inc." [Emphasis added.]  Yet, when it came to their own pay, Janus disregarded its own pay for performance policies and a decisive shareholder vote by its own investors.

12.    Further, an article published in the *New York Times* on June 18, 2011, entitled "Paychecks as Big as Tajikistan" (the "NY Times Article"), stated that Janus "topped the list" of companies that compensated executives irrespective of performance.  In particular, the NY Times Article highlights that the Board awarded executive compensation that accounted for almost 2% of the Company's average market value during 2010 making it the *worst* offender of the 483 companies examined.

13.     Most egregiously, the Board cannot claim that it was unaware of its suspect compensation practices prior to the negative vote. Specifically, in 2009, Glass, Lewis & Co. ("Glass Lewis") ranked Janus's CEO as being the 15th most overpaid CEO in the country. Critically, the Board's decision to again overcompensate its new, unproven CEO is particularly offensive given the criticism the Board has previously received.

14.     Janus has been damaged by the Board's breaches of its fiduciary duty of loyalty in connection with approving the excessive 2010 compensation package and failing to rescind the unwarranted payments and by the Board's violation of the Exchange Act for making materially false and misleading statements in the Company's 2011 Definitive Proxy Statement.  Plaintiff seeks relief for Janus Board's disloyalty and its CEO and top executives' unjust enrichment.

15.     By this shareholder derivative action, Plaintiff seeks to enforce Janus's rights with respect to the excessive 2010 executive compensation awarded by the Board to Janus's executive officers (including the CEO), and to recover damages and other relief (including, but not limited to, reforming the Company's executive compensation practices to better-align stockholder/management interests going forward) on behalf of the Company.

## JURISDICTION AND VENUE

16.     Jurisdiction is founded upon federal question jurisdiction, pursuant to § 27 of the Exchange Act, as amended, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.

17.     This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

18.     Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including defendants' primary participation in the wrongful acts detailed herein, occurred in this district. One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## THE PARTIES

19.     Plaintiff Charles D. Swanson is and has been a shareholder of Janus since at least January 2003, and has held his Janus stock from January 2003 to the present.  Plaintiff is a citizen of the State of Maine. *See* Verification, Exhibit 1.

20.     Nominal Defendant Janus is a Delaware corporation with its principal place of business located at 151 Detroit Street, Denver Colorado 80206.

21.     Defendant Richard M. Weil ("Weil") has served as CEO and a director of the Company since February 1, 2010.  Despite Janus's poor performance in 2010, Weil's compensation totaled $20,337,868 in 2010.  As a result of his receipt of exorbitant, unwarranted compensation, Weil has been unjustly enriched.  Weil also falsely represented to Janus's shareholders in Janus' 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not. Upon information and belief, defendant Weil is a citizen of Colorado.

22.     Defendant Steven L. Scheid ("Scheid") has been Chairman of the Company's Board since January 2004 and a director of the Company since December 2002. Scheid falsely represented to Janus's shareholders in Janus's 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.  Upon information and belief, defendant Scheid is a citizen of Colorado.

23.     Defendant Timothy K. Armour ("Armour") has been a director of the Company since March 2008 and served as Interim CEO of the Company from July 2009 until February 1, 2010. Armour served as a member of the Company's Compensation Committee during the relevant period.  Armour falsely represented to Janus' shareholders in Janus's 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.  Upon information and belief, defendant Armour is a citizen of Colorado.

24.     Defendant Paul F. Balser ("Balser") has been a director of the Company since June 2000 and has served as a member of the Company's Compensation Committee during the relevant period.  Balser falsely represented to Janus's shareholders in Janus's 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.  Upon information and belief, defendant Balser is a citizen of New York.

25.     Defendant G. Andrew Cox ("Cox") has been a director of the Company since October 2002 and has served as a member of the Company's Compensation Committee during the relevant period.  Cox falsely represented to Janus's shareholders in Janus's 2011 Proxy

7

Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.  Upon information and belief, defendant Cox is a citizen of Colorado.

26.     Defendant Jeffrey J. Diermeier ("Diermeier") has been a director of the Company since March 2008.  Dermeier falsely represented to Janus's shareholders in Janus's 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.  Upon information and belief, defendant Diermeier is a citizen of Florida.

27.     Defendant J. Richard Fredericks ("Fredericks") has been a director of the Company since October 2006.  Fredericks falsely represented to Janus's shareholders in Janus's 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.  Upon information and belief, defendant Fredericks is a citizen of California.

28.     Defendant Deborah R. Gatzek ("Gatzek") has been a director of the Company since March 2004.  Gatzek falsely represented to Janus's shareholders in Janus's 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.  Upon information and belief, defendant Gatzek is a citizen of California.

29.     Defendant Lawrence E. Kochard ("Kochard") has been a director of the Company since March 2008 and has served as a member of the Company's Compensation Committee during the relevant period.  Kochard falsely represented to Janus's shareholders in Janus's 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in

8

2010 when, in fact, it did not.  Upon information and belief, defendant Kochard is a citizen of Virginia.

30.     Defendant Robert T. Parry ("Parry") has been a director of the Company since March 2005.  Parry falsely represented to Janus's shareholders in Janus's 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not. Upon information and belief, defendant Parry is a citizen of California.

31.     Defendant Jock Patton ("Patton") has been a director of the Company since March 2007 and has served as a member of the Company's Compensation Committee during the relevant period. Patton falsely represented to Janus's shareholders in Janus's 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not. Upon information and belief, defendant Patton is a citizen of Arizona.

32.     Defendant Glenn S. Schafer ("Schafer") has been a director of the Company since December 2007.  Schafer falsely represented to Janus's shareholders in Janus's 2011 Proxy Statement that Janus followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not. Upon information and belief, defendant Schafer is a citizen of California.

33.     Defendants Weil, Scheid, Armour, Balser, Cox, Diermeier, Fredericks, Gatzek, Kochard, Parry, Patton, and Schafer are hereinafter collectively referred to as the "Director Defendants".

34.     Defendant Jonathan D. Coleman ("Coleman") has served as Executive Vice President and Co-Chief Investment Officer ("CIO") of the Company, and its predecessor company, since November 2006.  Despite Janus's poor performance in 2010, Coleman's

9

compensation totaled $ 6,215,319 in 2010.  As a result of his receipt of exorbitant, unwarranted compensation, Coleman has been unjustly enriched.  Upon information and belief, defendant Coleman is a citizen of Colorado.

35.     Defendant Gregory A. Frost ("Frost") has served as Executive Vice President of the Company since January 2008, Chief Financial Officer ("CFO"), since March 2007 and Treasurer since September 2009. Despite Janus's poor performance in 2010, Frost's compensation totaled $1,293,087 in 2010.  This has resulted in Frost's unjust enrichment.  Upon information and belief, defendant Frost is a citizen of Colorado.

36.     Defendant James P. Goff ("Goff") has served as Director of Research of the Company, and its predecessor company, since January 2002. Goff also currently serves as portfolio manager of the Janus Global Research Fund (since February 2005), the Janus Research Fund (since February 2007), and the Janus International Research Fund (since July 2010). Despite Janus's poor performance in 2010, Goff's compensation totaled $5,154,353 in 2010.  As a result of his receipt of exorbitant, unwarranted compensation, Goff has been unjustly enriched. Upon information and belief defendant Goff is a citizen of Colorado.

37.     Defendant R. Gibson Smith ("Smith") has served as Executive Vice President and Co-CIO of the Company, and its predecessor company, since November 2006.  Despite Janus's poor performance in 2010, Smith's compensation totaled $7,728,687 in 2010.  As a result of his receipt of exorbitant, unwarranted compensation, Smith has been unjustly enriched.  Upon information and belief, defendant Smith is a citizen of Colorado.

38.     Defendants Weil, Coleman, Frost, Goff, and Smith are hereinafter referred to collectively as the "Executive Defendants".

10

## THE DUTIES OF JANUS'S DIRECTORS AND OFFICERS

39.     As directors and officers of Janus, Defendants owed fiduciary duties of candor, good faith and loyalty to the Company. They are prohibited from engaging in self-dealing as well as unlawful corporate conduct, such as violations of the laws, rules and regulations applicable to Janus and its business.

40.     Defendants, because of their positions of control and authority as directors and/or officers of Janus, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their executive and directorial positions with Janus, Defendants knew or should have known that by increasing 2010 executive compensation while Janus's share price declined, they were breaching their fiduciary duties of candor, good faith, loyalty and reasonableness owed to Janus, as well unjustly enriching the Executive Defendants, at the Company's expense.  Defendants also knew or should have known that by unanimously recommending shareholder approval of the 2010 executive compensation in the Proxy they were breaching their fiduciary duty of candor and violating the Board's stated, purported pay-for-performance executive compensation policy, which requires Janus to "provide a strong and direct link between pay and both Company and individual performance."   .

41.     At times relevant hereto, Defendants were the agents of each of the other Defendants and were at all times acting within the course and scope of such agency.

42.     Pursuant to the Company's Compensation Committee charter, the Compensation Committee Defendants were specifically obligated, *inter alia*, to:

    a.   annually determine the compensation package of the CEO (and the other
         executive officers) including reviewing and approving corporate goals and

objectives and evaluating the CEO's performance in light of those goals and objectives; and

b. review and discuss with management the Company's compensation discussion and analysis required to be included in the Company's Proxy.

## ADDITIONAL SUBSTANTIVE ALLEGATIONS

43.     Janus and its subsidiaries provide investment management, administration, distribution and related services to individual and institutional investors through mutual funds, other pooled investment vehicles, separate accounts and subadvised relationships in both domestic and international markets. According to its public filings, "Janus is a publicly owned asset management holding company with approximately $167.7 billion in assets under management."

44.     Throughout the Relevant Period, the Board (and particularly, the Compensation Committee) has materially overcompensated Janus's senior executives and, most notably, its CEO, defendant Weil, irrespective of the Company's actual performance and the performance of its stock. The directors on the Board are directly responsible for this disconnect between management and stockholder interests.

45.     For instance, in 2010, compensation for the Company's top five executives rose by 41%, despite the fact that Janus's stock price actually decreased by approximately 7% while the Dow *increased* by almost 9%. Thus, under the leadership of the newly-wealthy defendant Weil, the price of the Company's stock lagged behind the Dow by nearly 16%.

46.     As detailed herein, in light of, *inter alia*, the Board's repeated "pay-for-performance" statements (including those in the Proxy), and the drop in the Company's share price caused by this current management team (led by Weil), there is reason to doubt that: (a) the

12

Board complied with its fiduciary duties; and/or (b) the Board's 2010 compensation decisions were protected business judgments. Plaintiff alleges that the Board's 2010 compensation decisions constituted a breach of their fiduciary duties of candor, good faith and loyalty, as well as causing Weil and the other Executive Defendants to be unjustly enriched.

47.     On January 4, 2010, the first trading day of 2010, the Company's stock price opened at $13.61 per share.  By December 31, 2010, it closed at $12.97 per share, a 4.7% decrease.  Further, the price of Janus stock has continued to perform poorly, closing at $6.49 on August 10, 2011.

48.     This poor performance is even more troubling when compared to the Dow Jones Industrial Average, whose price increased by approximately 11% in 2010.

49.     Indeed, a recent article dated July 13, 2011 on seekingalpha.com titled "Janus Woes Highlight Investor Frustration With Active Funds" highlighted Janus's recent woes, noting that investors have taken out over $18.5 billion from Janus mutual funds over the past seven quarters. As stated in the article:

> Some of the most celebrated mutual-fund firms and managers during the go-go 1990s in stocks have been felled by the credit crisis as investors grow increasingly disillusioned with most active managers' failure to beat their benchmarks after fees and taxes.
>
> * * *
>
> This week, Janus (NYSE: JNS) shares have been under pressure on reports investors pulled more money from the company's investment products last month. The firm established a gun-slinging reputation in the tech bubble with its rock-star managers and concentrated stock portfolios. But the dot-com bust and the credit crisis were tough on many Janus funds.

13

> Investment managers, led by Janus, lost assets in June as investors continued to flee funds, reports Christopher Condon for Bloomberg. Janus shares are down nearly 30% this year.
>
> "It was a terrible month for the industry, but given they are mostly in equities and the relative poor performance of their funds, Janus will look worse than the others," commented Jason Weyeneth, an analyst from Sterne, Agee & Leach, in the report.
>
> Investors pulled $954 million from the 20 largest Janus stock and bond mutual funds, which account for 55% of total assets under management, in June, according to Bloomberg. In total, investors took out $18.5 billion over the past seven quarters and over $2 billion from mutual funds in the last quarter, the report said.

50.     Defendants have represented publicly that Janus's executive compensation practices are firmly rooted in a "pay-for-performance" policy. For example, in the Proxy, the Board represented that the goal of the Company's executive compensation programs is to "provide a strong and direct link between pay and both Company and individual performance." Additionally, the Board represented that "compensation of our most senior executives, those who have the greatest ability to influence Janus' performance, should be primarily based on Company and individual performance – an approach that reinforces the alignment of interests between our executives and our public and fund shareholders."

51.     Thus, in theory (and by Defendants' own admissions), when Janus achieves good operating performance, executive compensation should increase, and when Janus fails to meet these criteria, executive compensation should decrease. In practice, however, the Board has increased executive compensation dramatically even when Janus's share price decreases.

14

52.   Despite the Company's poor performance in 2010, the Janus Board, in violation of its own executive compensation policy, authorized a substantial boost in compensation to their executive officers, and in particular to their newly appointed CEO, defendant Weil.

53.   Weil was appointed to CEO effective February 1, 2010. He received an initial grant of $10,000,000 in restricted stock as an initial sign-on incentive, and received total compensation of $20,337,868 in 2010.

54.   The Company's other named executive officers made the following amounts for 2010:

| Name and Principal Position | Year | Salary ($) | Restricted Stock Awards ($) | Option Awards ($) | Non-Equity Incentive Plan Compensation ($) | All Other Compensation ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| Gregory A. Frost, | 2010 | $400,000 | $ 100,095 | $100,102 | $ 660,000 | $ 32,890 | $1,293,087 |
| Jonathan D. Coleman, | 2010 | $500,000 | $ 605,822 | $605,818 | $ 4,465,785 | $ 37,894 | $6,215,319 |
| R. Gibson Smith, | 2010 | $500,000 | $ 623,551 | $623,552 | $ 5,943,835 | $ 37,749 | $7,728,687 |
| James P. Goff, | 2010 | $500,000 | $ 507,588 | $507,584 | $ 3,611,207 | $ 27,974 | $5,154,353 |

55.   In 2010, Janus's five highest paid Section 16 executive officers -- defendants Weil, Frost, Coleman, Smith, and Goff -- collectively received almost ***$41 million*** in executive compensation (or 41% more than awarded in 2009), as detailed below:

15

| Name | Salary | Non-Equity Incentive Plan Compensation | Stock and Options Awards | Total Compensation[1] |
|---|---|---|---|---|
| Weil | $458,333 | $3,500,000 | $15,999,996 | $20,337,868 |
| Frost | $400,000 | $600,000 | $200,197 | $1,293,087 |
| Coleman | $500,000 | $4,465,785 | $1,211,640 | $6,215,319 |
| Smith | $500,000 | $5,943,835 | $1,247,103 | $7,728,687 |
| Goff | $500,000 | $3,611,207 | $1,015,172 | $5,154,353 |
| **Total** | | | | **$40,729,314** |

56.     The amount of executive compensation received by the Company's executive officers when analyzed in relation to Janus's dismal financial performance in 2010 evidences the lack of a meaningful relationship between the 2010 executive compensation and Janus's corporate performance.

57.     In fact, an article published in the *New York Times* on June 18, 2011 titled "Paychecks as Big as Tajikistan" stated that Janus "topped the list" of companies that overpaid executives irrespective of performance. Specifically, the article stated that among the 483 companies analyzed, only eleven "gave top executives a combined pay package amounting to 1 percent or more of the companies' average market value over the course of the year," with Janus "topp[ing] the list," paying almost $41 million for five executives, which "accounted for 1.95 percent of the company's average market value over 2010."  As stated in the article:

---

[1] Total Compensation includes the following: Salary, Restricted Stock Awards, Option Awards, Non-Equity Incentive Plan Compensation, and All Other Compensation (as defined in the Proxy).

When does big become excessive? If the question involves executive pay, the answer is "often."

But despite the reams of figures about pay in any given year, shareholders often have to struggle to put those numbers into perspective. Companies typically hold up pay from previous years as a benchmark, but just how *this* paycheck stacks up against, say, a company's earnings or stock market performance is rarely laid out.

Investors can run the numbers themselves, of course, but it's a pretty laborious process. As a result, pay for most public companies' top executives exists in a sort of vacuum, as far as investors are concerned. Shareholders know they pay a lot for the hired help, but a lot compared with what?

Answers to that question come fast and furious in a recent, immensely detailed report in The Analyst's Accounting Observer, a publication of R. G. Associates, an independent research firm in Baltimore. Jack Ciesielski, the firm's president, and his colleague Melissa Herboldsheimer have examined proxy statements and financial filings for the companies in the Standard & Poor's 500-stock index. In a report titled "S.& P. 500 Executive Pay: Bigger Than ...Whatever You Think It Is," they compare senior executives' pay with other corporate costs and measures.

It's an enlightening, if enraging, exercise. And it provides the perspective that shareholders desperately need, particularly now that they are being asked to vote on corporate pay practices.

Let's begin with the view from 30,000 feet. Total executive pay increased by 13.9 percent in 2010 among the 483 companies where data was available for the analysis. The total pay for those companies' 2,591 named executives, before taxes, was $14.3 billion.

That's some pile of pay, right? But Mr. Ciesielski puts it into perspective by noting that the total is almost equal to the gross domestic product of Tajikistan, which has a population of more than 7 million.

Warming to his subject, Mr. Ciesielski also determined that 158 companies paid more in cash compensation to their top guys and

17

gals last year than they paid in audit fees to their accounting firms. Thirty-two companies paid their top executives more in 2010 than they paid in cash income taxes.

The report also blows a hole in the argument that stock grants to executives align the interests of managers with those of shareholders. The report calculated that at 179 companies in the study, the average value of stockholders' stakes fell between 2008 and 2010 while the top executives at those companies received raises. The report really gets meaty when it compares executive pay with items like research and development costs, and earnings per share.

The report, for instance, compared earnings per share with cash pay — just salary and bonus, if there is one. It identified 24 companies where cash compensation last year amounted to 2 percent or more of the company's net income from continuing operations.

* * *

*Finally,* there's *the comparison of executive pay with market capitalization. As Mr. Ciesielski noted, this calculation provides the biggest shock value.*

*Eleven companies analyzed in the report gave top executives a combined pay package amounting to 1 percent or more of the companies' average market value over the* course *of the year. The Janus Capital Group, the mutual fund concern, topped the list, with pay totaling almost $41 million for five executives. This accounted for 1.95 percent of the company's average market value over 2010.*

*"To earn their keep," the report said, "managers would have to create stock market value in the full amount of their pay." The executives at Janus failed to increase value in 2010, when the stock closed out the year roughly where it had begun it. This year, the company's shares are down almost 30 percent.*

*Janus declined to comment.*

Mr. Ciesielski says he believes that shareholders need more context when it comes to pay practices — and that rule makers should improve pay reports. "The disclosures really are not sufficient to get people fired up," he said in an interview last *week*,

18

"unless they add up the compensation and find out how it relates to other things."

"We need a different model," he added. "There is a real lack of information here **about** how shareholders' funds are being managed."

58.   Another article dated May 30, 2011 in *Pensions & Investments*, entitled "Janus CEO Weil faces uphill climb in 2nd year on job", quoted Weil as recognizing that Janus has failed to deliver.  The article quoted Weil as saying "[w]e know that we haven't yet delivered the results that we need to deliver" and reported that Weil also noted that turning around the money manager would be a multiyear process. In addition, the article noted that Janus's $173.5 billion in assets under management as of March 31 were little more than half of its $321 billion peak in the first quarter of 2000, and further described how the performance of Janus's largest mutual funds has been very poor, stating "Performance has not improved, however, for Janus' traditional domestic growth equity funds. Seven of Janus' 10 largest mutual funds were in the bottom quartile for the year ended April 11, according to a May 17 J.P. Morgan Securities report."

59.   Moreover, the Board cannot claim that it was unaware of its suspect compensation practices prior to the negative vote. Specifically, in 2009, Glass Lewis ranked Janus's CEO as being the 15th most overpaid CEO in the country. Additionally, the above-quoted *Reuters* article quoted Company spokesman James Aber as stating "[p]rior to the vote, we were aware of some shareholder concerns…and we have been working with our board on implementing responsive changes." Critically, the Board's decision to again overcompensate its new, unproven CEO is particularly offensive given the criticism the Board has previously received.

60.     On March 16, 2011, Janus filed its 2011 Proxy Statement in which the Janus

Board unanimously recommended the approval of the 2010 executive compensation in Janus's

first Dodd-Frank mandated "say on pay" vote.  The Janus Board falsely stated that its

compensation committee emphasized "pay for performance."  The Proxy stated:

> **Proposal No. 3: Non-binding Advisory Vote Related to Executive Compensation.**
>
> Pursuant to regulations recently adopted by the SEC and as required by the Dodd-Frank Wall Street Reform and Consumer Protection Act, our shareholders are being provided with the opportunity to consider the compensation of our Company's named executive officers ("say-on-pay vote") by voting for or against the resolution below. As provided for in the regulations, the vote is considered advisory and non-binding on the Company and its Board of Directors. Although it is non-binding under the regulations, the Board and its Compensation Committee value the opinions that our shareholders express in their votes.
>
> > **RESOLVED**, that the shareholders approve the compensation of the Company's named executive officers, as disclosed in the Compensation Discussion and Analysis, the compensation tables, and any related material disclosed in this Proxy Statement.
>
> Approval of Proposal No. 3, which begins on page 71, requires the affirmative vote of a majority of the shares present or represented by proxy at the Annual Meeting and entitled to vote on this proposal.
>
> ***THE BOARD OF DIRECTORS RECOMMENDS THAT THE SHAREHOLDERS VOTE "FOR" PROPOSAL NO. 3, APPROVING A NON-BINDING ADVISORY VOTE ON OUR NAMED EXECUTIVE OFFICERS' COMPENSATION.***

[Emphasis added.]

61.     The Janus Board falsely represented to Janus's shareholders that the Company's

executive compensation practices are firmly rooted in a pay-for-performance philosophy.  As

stated in the Company's 2011 Proxy Statement, its executive compensation programs are

supposedly designed to "attract, motivate and retain highly qualified executives and other key

20

talent by offering fully competitive total compensation opportunities" to "reward strong performance against financial and strategic (non-financial) objectives," and to "promote a performance-based culture with individual compensation levels varying significantly from year to year based on changes in business and individual performance assessed quantitatively and qualitatively."

62.     On April 28, 2011, for the first time in the Company's history, shareholders were given the chance to voice their opinions as to executive compensation, and a "say on pay" vote was conducted via the Proxy, whereby Janus shareholders were afforded the chance to voice their dissatisfaction with both the Board's clear disregard for the Board's own prior statements regarding executive compensation and the Company's dreadful stock performance.

63.     The shareholder vote occurred as a result of new legislation designed to give shareholders a say on executive compensation, in light of egregious CEO pay and other executive compensation occurring within companies similar to Janus.  In July 21, 2010, the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act") was signed into law.  The Dodd-Frank Act was enacted in response to the worst financial crisis since the Great Depression in an attempt to restore responsibility and accountability in our financial system.

64.     Section 951 of the Dodd-Frank Act requires that companies include a resolution in their proxy statements asking shareholders to approve, in a nonbinding vote, the compensation of their executive officers, as disclosed under Item 402 of Regulation S-K (the "say-on-pay" vote).  A separate resolution is also required to determine whether this say-on-pay vote takes place every one, two, or three years (the "say-on-frequency" vote).

65.     Say-on-pay was enacted because executive compensation has become decoupled from financial performance.  As the Senate Banking, Housing, and Urban Affairs Committee stated, "[t]he economic crisis revealed instances in which corporate executives received very high compensation despite the very poor performance by their firms."[2] Say-on-pay is intended to "serve as a direct referendum on the decisions of the compensation committee" and allow shareholders and board members "to stand up to excessively demanding officers or compensation consultants."[3]

66.     On October 18, 2010, the Securities and Exchange Commission ("SEC") issued proposed rules under the Exchange Act to implement Section 951 of the Dodd-Frank Act and on January 25, 2011, the SEC adopted the rule changes to implement the provisions of the Dodd-Frank Act relating to shareholder approval of executive compensation.[4]

67.     Say-on-pay is intended to promote increased accountability of board members and corporate management and as such, the Janus Board is not entitled to business judgment related to the 2010 executive compensation as the adverse shareholder vote is evidence that rebuts the presumption.

68.     Despite the Janus Board's unanimous recommendation "for" approval, Janus's shareholders rejected the Company's 2010 executive compensation plan. Among the

---

[2] S. REP. 111-176, S. Rep. No. 176, 111TH Cong., 2ND Sess. 2010, 2010 WL 1796592, at p. 133

[3] *Id.*

[4] *See* Release No. 33-9178 (January 25, 2011) (the "Adopting Release").  Section 951 of the Dodd-Frank Act added Section 14A to the "Exchange Act".

shareholders that cast a vote, 82,667,210 shares voted against approval of the executive

compensation, while only 58,890,647 voted for approval of the executive compensation.

Accordingly, among the votes cast, approximately 58% voted against approval, placing Janus in

the minority of companies to fail to obtain majority support from stockholders for its executive

compensation.

69.     According to the May 30, 2011 *Pensions & Investments* article, Janus is one of a

handful of companies to have executive pay voted down:

**Shareholders reject pay**

Adding to Mr. Weil's problems was the April 26 advisory vote by
shareholders rejecting his $20 million 2011 compensation package as well
as the pay of four other named Janus executive officers.

With the vote, Janus became one of only a handful of companies where
executive pay was rejected. Proxy advisers Glass Lewis and Institutional
Shareholder Services both urged shareholders to reject the pay packages,
maintaining Janus' pay-for-performance criteria was inadequate.

Mr. Weil said he took the vote very seriously.

*"I see my job as to make sure that my pay and our firm compensation
aligns with delivering good results for our investment clients and
delivering good returns for our owners," he said. "My own
compensation should respond to those metrics as should the rest of the
firm."*

[Emphasis added.]

70.     With the adverse shareholder vote, the presumption of business judgment

surrounding the Janus Board's 2010 executive compensation decision has been rebutted.

71.     Although the adverse shareholder vote rebuts the presumption that the Janus

Board' s 2010 executive compensation decisions were the product of a valid exercise of business

judgment, the Janus Board has not rescinded the excessive 2010 executive compensation, nor has it publicly indicated any intention to do so. This result ignores the will of Janus's shareholders.

72.     In fact, as noted in an article on Reuters.com titled "Analysis: Janus faces pay pressure after shareholder vote," Janus has often voted against pay proposals at companies in its portfolio, making the Board's actions within its own company particularly hypocritical. As stated in the article:

> BOSTON (Reuters) - When it comes to executive pay at mutual fund manager Janus Capital Group (JNS.N: Quote, Profile, Research, Stock Buzz), the shoe is on the other foot.
>
> Janus, which often votes against pay proposals at companies in its portfolio, saw its own shareholders reject the compensation its board had set for top executives at the Denver asset manager.
>
> The vote last month was only advisory, so the board can ignore it, but it does signal investor dissatisfaction.
>
> Nearly two dozen other companies have gotten similar feedback this proxy season. But for Janus, the vote was particularly stinging; by some measures, it is more aggressive than other big asset managers on the subject of executive pay.
>
> If Janus fails to change its own pay now, "the risk is they would be viewed as being hypocritical," said Jeff Marshall, co-founder of Moxyvote.com, which tracks corporate governance issues.

73.     The article further describes Janus's poor performance and its unreasonable compensation packages, particularly to the Company's CEO, defendant Weil:

> Janus faces trouble at home. Its shares have fallen 22 percent so far this year, the most of peers, as it has reported continued outflows from investors concerned about the mixed performance of some of its equity funds.

The company hired former Pimco executive Richard Weil as chief executive officer to turn things around. He arrived on February 1, 2010, and received $20.3 million for that year, including a signing bonus of $10 million in restricted stock vesting over three years, according to Janus' proxy filing.

* * *

SHAREHOLDER SETBACK

Still, stockholders were not happy. In the advisory vote at the company's annual meeting on April 28, 82.7 million shares were cast against the executive pay proposal, and 59.9 million shares were voted for it. Those results were not a surprise after ISS, the influential advisory unit of MSCI Inc (MSCI.N: Quote, Profile, Research, Stock Buzz), recommended an "against" vote.

In a report, ISS said Weil's new-hire package "appears overly generous for a newly appointed CEO" and that the $10 million was "unacceptable to shareholders due to the lack of disclosure and rationale provided" in the proxy.

Janus board members either did not respond to requests for comment or referred questions to a company spokesman. In the proxy, Janus said a compensation redesign was under way.

74.     Janus has been injured by the Board's approval of the 2010 executive compensation and Janus' executives have been unjustly enriched by the 2010 executive compensation they received.

75.     Plaintiff seeks to recover damages and other relief for Janus against the Janus Board members for their breaches of fiduciary duties and Janus' CEO and top executives for their unjust enrichment.

## **DAMAGES TO JANUS**

76.     Janus has been damaged by the Board's awards of unwarranted, outsized executive compensation. In 2010, the Company's share price steeply lagged behind the Dow,

25

yet, incredibly, executive compensation for Company's executive officers increased by almost

41%. Additionally, the Board bestowed upon its new CEO a $10 million signing bonus and $20

million in total compensation, which given the Company's paltry performance was unwarranted.

When for the first time given the opportunity to offer their own independent judgment of the

Company's executive compensation, a majority of Janus's voting shareholders firmly rejected

the 2010 executive compensation (and rightfully so). Yet, even in the face of this visceral

reaction by Janus's shareholders, the Board has not altered or amended the 2010 compensation,

to the detriment of the Company and its stockholders. In fact, the Board has not even

***acknowledged*** the shareholders' significant rejection of 2010 compensation. By contrast, the

Janus executives who received excessive 2010 compensation have been unjustly enriched.

77.     By this derivative action, Plaintiff seeks to recover damages and other relief for

Janus against Defendants for their breaches of fiduciary duties of candor, good faith and loyalty,

and for unjust enrichment. Absent this action, as the Board has already amply demonstrated, the

Company's rights against its wayward fiduciaries will not be exercised to the further detriment of

the Company.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

78.     Plaintiff repeats and realleges each and every allegation set forth above as if set

forth fully herein.

79.     Plaintiff brings this action derivatively on behalf of Janus to redress injuries

suffered, and yet to be suffered, by the Company as a direct and proximate result of Defendants'

misconduct. The Company is a nominal defendant named solely in a derivative capacity.

80.     Plaintiff purchased and held shares of Janus during the Relevant Period and continues to hold such shares. Thus, Plaintiff was a Janus shareholder during the wrongdoing complained of herein.

81.     Plaintiff will fairly and adequately represent the interests of the Company in this litigation, and as retained competent counsel experienced in derivative litigation to enforce and prosecute this action.

82.     The wrongful acts complained of herein subject and will persist in subjecting Janus to continuing harm because the adverse consequences of the injurious actions are still in effect and ongoing.

## THE FUTILITY OF DEMAND

83.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

84.     At the time of the filing of this action, the Board is comprised of the following twelve directors: defendants Weil, Scheid, Armour, Balser, Cox, Diermeier, Fredericks, Gatzek, Kochard, Parry, Patton, and Schafer.

85.     A pre-suit demand upon the Janus Board would have been a useless and futile action, and is therefore, excused for several reasons.

86.     Demand is excused  because the Board has both unanimously recommended to Janus's shareholders that they approve Janus's excessive 2010 executive compensation and failed to take any action once their recommendation was rejected.  As detailed above, Janus's share price decreased in 2010 (and continues to decrease) and steeply lagged the Dow. Yet, despite the purported pay-for-performance executive compensation policy, the Board

27

inexplicably increased 2010 executive compensation and bestowed upon its new CEO the incredibly lucrative package described herein. There is doubt that the Board's 2010 compensation decisions were reasonable, loyal and made in good faith, and are presumptively protected business judgments because those decisions violated Janus's pay-for-performance policy.  Accordingly, a pre-suit demand is useless and futile under the circumstances of this case, and therefore, excused.

87.     Demand is excused as each of the directors has been named as a defendant in this action and was a director when the excessive 2010 executive compensation was issued and then rejected by the Janus shareholders, and each director participated in issuing materially false and misleading statements in the Company's 2011 Proxy Statement.  Demand is excused because the entire Janus Board is interested in the outcome of this litigation as each of the directors is liable for breaches of their fiduciary duties through their violation of Janus's pay-for-performance policy. Consequently, the directors face a substantial likelihood of liability and are interested in the outcome of this action.

88.     Demand is further excused because the entire Board recommended publicly that Janus's shareholders unanimously approve Janus's 2010 executive compensation, including the lucrative compensation packaged bestowed on defendant Weil. On April 29, 2011, a majority (60%) of Janus's voting shareholders rejected Janus's 2010 executive compensation. Yet, the Board has not altered or otherwise amended the 2010 executive compensation, nor indicated that it has any intention of doing so.  By first recommending that the Company's stockholders approve the excessive 2010 executive compensation, and then failing to take any action whatsoever in the face of the adverse stockholder vote, the Board has openly demonstrated its

hostility to this action and demonstrated that a pre-suit demand upon it to take such action is a useless and futile act.  Accordingly, demand is excused.

89.     Demand is also excused because, based upon information and belief, Defendants do not intend to investigate Plaintiff's claims that the Board breached its fiduciary duties by approving the excessive compensation awarded to the Executive Defendants.

90.     Pre-suit demand on defendant Weil is excused because his principal professional occupation is his employment as the CEO of Janus.  Accordingly, Weil has received and continues to receive substantial monetary compensation and other valuable benefits (including the excessive compensation complained of herein). Thus, Weil lacks independence from demonstrably interested directors, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.

91.     Moreover, Weil received excessive and unwarranted executive compensation in 2010, and, as a result, was the direct recipient of financial benefits from the misconduct challenged herein that were not shared with Janus's stockholders. Thus, Weil is directly interested in a demand, and accordingly, pre-suit demand upon Weil is excused.

92.     Defendants Patton, Armour, Balser, Cox, and Kochard are interested in a demand as a result of their conduct on the Compensation Committee. Pursuant to the Company's Compensation Committee Charter, directors on the Compensation Committee are responsible for, inter alia, setting executive compensation and reviewing among other things, Janus's performance relative to the performance metrics that formulate the Company's executive compensation programs. Defendants Patton, Armour, Balser, Cox, and Kochard breached their fiduciary duties of due care, loyalty, and good faith, because the Compensation Committee, inter

alia, awarded the above-discussed increased 2010 executive compensation, which was wholly divorced from the Company's performance. Further, the Compensation Committee has done nothing to rectify its above failures, despite the sound rejection of the Company's 2010 compensation by 60% of its stockholders.  Therefore, defendants Patton, Armour, Balser, Cox, and Kochard (if not the entire Board) each face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

93.     A pre-suit demand is further excused because a majority of the Board either was at fault for the misconduct described herein and/or is liable for the misconduct described herein. As such, the Board members are disabled as a matter of law from objectively considering any pre-suit demand, rendering demand futile and excused.

94.     Demand is excused because the directors are not entitled to business judgment protection for their decisions relating to the 2010 executive compensation as the adverse shareholder vote rebuts that presumption.

95.     Demand is excused because the directors have exhibited antipathy towards the relief sought herein by first recommending approval of the 2010 executive compensation and then thwarting the will of the shareholders by failing to rescind the 2010 executive compensation after the shareholders overwhelming voted against it.

## COUNT I

**VIOLATION OF § 14(a) OF THE EXCHANGE ACT**
**(Against the Director Defendants)**

96.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully herein.

30

97.     The Director Defendants issued, caused to be issued, and participated in the issuance of materially false and misleading statements contained in the Company's 2011 Proxy relating to the Company's pay-for-performance policy. For example, in the Proxy, the Board represented that the goal of the Company's executive compensation programs is to "provide a strong and direct link between pay and both Company and individual performance." Additionally, the Board represented that "compensation of our most senior executives, those who have the greatest ability to influence Janus' performance, should be primarily based on Company and individual performance – an approach that reinforces the alignment of interests between our executives and our public and fund shareholders." Yet, such assertions were false, as, in actual fact, executive compensation was not tied to positive performance during the Relevant Period.

98.     By reason of the conduct alleged herein, each Director Defendants violated Section 14(a) of the Securities Exchange Act of 1934.

99.     As a result, Janus and its shareholders have been substantially damaged, and the misleading statements tainted the entire Proxy and vote.

**COUNT II**

**AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY
DUTY IN CONNECTION WITH THE ISSUANCE OF
FALSE AND MISLEADING STATEMENTS**

100.     Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

101.     Each of the Defendants was a director and/or officer of Janus and as such owed to Janus the highest duty known to the law. Each of the Defendants agreed to and did participate in and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of the fiduciary duties these defendants owed to Janus.

102.    As demonstrated by the allegations above, the Defendants breached their

fiduciary duties of loyalty, good faith, candor and independence owed to Janus and its

shareholders, and failed to disclose material information and/or made material

misrepresentations to shareholders regarding Janus's 2010 executive compensation scheme.

103.    The Defendants have violated fiduciary duties of care, loyalty, good faith, candor

and independence owed to Janus and its shareholders, have engaged in unlawful self-dealing and

have acted to put their personal interests and/or their colleagues' interests ahead of the interests

of Janus and its shareholders. As directors and/or officers of Janus, the Defendants participated

in the wrongful acts alleged herein. They thereby breached their fiduciary duties to Janus's

shareholders.

104.    As corporate fiduciaries, the Defendants owed Janus and its shareholders a duty

of candor and full and accurate disclosure. As a result of the conduct complained of, the

Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or

concealed material facts from Janus's shareholders despite their duties to, *inter alia*; disclose the

true facts regarding Janus. Thus they have violated their duty of candor.

105.    In committing the wrongful acts particularized herein, the Defendants have

pursued or joined in the pursuit of a common course of conduct, and have acted in concert with

one another in furtherance of their common plan or design.

106.    At all relevant times, the Defendants collectively and individually initiated a

course of conduct which was designed to and did: (i) conceal the fact that the Company was

overpaying its directors, officers and employees via compensation plans premised on an illusory

"pay for performance" executive compensation scheme; and (ii) maintain their directorial and

executive positions at Janus and the profits, power and prestige which they enjoyed as a result of these positions.

107.    In particular, in the Proxy (and other filings), the Board represented the goal of the Company's executive compensation programs is to "provide a strong and direct link between pay and both Company and individual performance." Despite this (and other) representations, when the price of the Company's stock declined (and steeply lagged the Dow) the Board inexplicably increased total executive compensation. Accordingly, it is clear that the Board's repeated statements that it pays for performance were false and misleading.

108.    Defendants' misconduct was not due to an honest error of judgment, but rather their bad faith and was done knowingly, willfully, intentionally or recklessly.

109.    By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise good faith and instead have acted knowingly or in reckless disregard of their fiduciary obligations toward Janus and its public shareholders, harming Janus.

<u>**COUNT III**</u>

**AGAINST ALL DIRECTOR DEFENDANTS FOR BREACH OF FIDUCIARY DUTY IN CONNECTION WITH THE BOARD'S COMPENSATION PRACTICES**

110.    Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

111.    Each of the Defendants was a director and/or officer of Janus and as such owed to Janus the highest duty known to the law. Each of the Defendants agreed to and did participate in and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of the fiduciary duties these defendants owed to Janus.

112.     As demonstrated by the allegations above, the Defendants breached their

fiduciary duties of loyalty, good faith, candor and independence owed to Janus and its

shareholders by failing to adhere to the Company's purported pay-for-performance philosophy.

In particular, the Board repeatedly represented the goal of the Company's executive

compensation programs is to "provide a strong and direct link between pay and both Company

and individual performance." Despite this (and other) representations, when the price of the

Company's stock declined (and steeply lagged the Dow) the Board inexplicably increased total

executive compensation. This increase in executive compensation in direct contravention of the

Board's stated pay for performance philosophy was a breach of the Board's fiduciary duties.

113.     The Defendants have violated fiduciary duties of care, loyalty, good faith, candor

and independence owed to Janus and its shareholders, have engaged in unlawful self-dealing and

have acted to put their personal interests and/or their colleagues' interests ahead of the interests

of Janus and its shareholders. As directors and/or officers of Janus, the Defendants participated

in the wrongful acts alleged herein. They thereby breached their fiduciary duties to Janus's

shareholders.

114.     In committing the wrongful acts particularized herein, the Defendants have

pursued or joined in the pursuit of a common course of conduct, and have acted in concert with

one another in furtherance of their common plan or design.

115.     Defendants' misconduct was not due to an honest error of judgment, but rather

their bad faith and was done knowingly, willfully, intentionally or recklessly.

116.     By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise good faith and instead have acted knowingly or in reckless disregard of their fiduciary obligations toward Janus and its public shareholders, harming Janus.

## COUNT IV

**AGAINST ALL DIRECTOR DEFENDANTS FOR BREACH OF FIDUCIARY DUTY IN CONNECTION WITH THE BOARD'S FAILURE TO RESPOND TO THE NEGATIVE SAY ON PAY VOTE**

117.     Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

118.     Each of the Defendants was a director and/or officer of Janus and as such owed to Janus the highest duty known to the law. Each of the Defendants agreed to and did participate in and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of the fiduciary duties these defendants owed to Janus.

119.     As demonstrated by the allegations above, the Defendants breached their fiduciary duties of loyalty, good faith, candor and independence owed to Janus and its shareholders by failing to amend or alter 2010 executive compensation (or even issue a response) in connection with the negative say on pay vote. In particular, despite having their executive compensation program approved by a mere 40% of stockholders, the Board has done nothing in response, in direct violations of their fiduciary duties.

120.     The Defendants have violated fiduciary duties of care, loyalty, good faith, candor and independence owed to Janus and its shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of Janus and its shareholders. As directors and/or officers of Janus, the Defendants participated

in the wrongful acts alleged herein. They thereby breached their fiduciary duties to Janus's shareholders.

121.     In committing the wrongful acts particularized herein, the Defendants have pursued or joined in the pursuit of a common course of conduct, and have acted in concert with one another in furtherance of their common plan or design.

122.     Defendants' misconduct was not due to an honest error of judgment, but rather their bad faith and was done knowingly, willfully, intentionally or recklessly.

123.     By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise good faith and instead have acted knowingly or in reckless disregard of their fiduciary obligations toward Janus and its public shareholders, harming Janus.

## COUNT V

### AGAINST THE EXECUTIVE DEFENDANTS FOR UNJUST ENRICHMENT

124.     Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

125.     As a result of the conduct described above, Defendants will be and have been unjustly enriched at the expense of Janus, in the form of unjustified salaries, benefits, stock option grants and other emoluments of office.

126.     All the payments and benefits provided to the Defendants based upon or related to Defendants' executive compensation scheme were unjustly awarded and at the expense of Janus, resulting in substantially unearned benefits.

127.     Defendants should be ordered to disgorge the gains which they have and/or will unjustly obtain and/or a constructive trust should be imposed for the benefit of the Company.

128.     There is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     A determination that this action is a proper derivative action maintainable under the law and that demand is excused;

B.     Against the Defendants and in favor of Janus for the amount of damages sustained by the Company as a result of the breaches of fiduciary duty by the Defendants;

C.     Injunctive and/or other equitable relief as necessary or permitted by law, equity and the statutory provisions sued hereunder, including disgorgement, attachment, impoundment, imposition of a constructive trust on or otherwise restricting the disposition/exercise of improvidently awarded 2010 executive compensation;

D.     Directing Janus to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein;

E.     Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

F.     Granting Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  November 4, 2011                    CHARLES LILLEY & ASSOCIATES, P.C.

                                            /s/Charles W. Lilley_____
                                            Charles W. Lilley
                                            Karen Cody-Hopkins, Of Counsel
                                            730 17th Street, Suite 670
                                            Denver, Colorado 80202
                                            Telephone: (303) 293-9800
                                            Facsimile: (303) 298-8975
                                            Email: clilley@lilleylaw.com
                                            Email: karen@codyhopkinslaw.com
                                            *Attorneys for Plaintiff*

*Plaintiff's address:*
*Charles D. Swanson*
*703 Wolfe Neck, Rd.*
*Freeport, ME 04032*

*Of Counsel:*
Levi & Korsinksy, LLP
Shannon Hopkins (admitted *pro hac vice*)
Allen Schwartz (admitted *pro hac vice*)
30 Broad Street, 15th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

### CERTIFICATE OF SERVICE

        I hereby certify that on this 4th day of November 4, 2011, a true and correct copy of the foregoing Amended Complaint was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

        **1.  Mailing Information for a Case 1:11-cv-02142-WYD-BNB**
129.        Electronic Mail Notice List


The following are those who are currently on the list to receive e-mail notices for this case.

- **Douglas J. Clark**
  dclark@wsgr.com,ktrevisan@wsgr.com,aykim@wsgr.com

- **Karen Jean Cody-Hopkins**
  karen@codyhopkinslaw.com
- **Tamara Ann Hoffbuhr-Seelman**
  thoffbuhr@fwlaw.com,paralegal@fwlaw.com,sduran@fwlaw.com
- **Shannon Lee Hopkins**
  shopkins@zlk.com
- **Angie Young Kim**
  aykim@wsgr.com,vhernandez@wsgr.com
- **Charles Walter Lilley**
  clilley@lilleylaw.com
- **Ignacio Evaristo Salceda**
  isalceda@wsgr.com,rlustan@wsgr.com
- **Kip Brian Shuman**
  kip@shumanlawfirm.com,rusty@shumanlawfirm.com

130.       Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

☐ (No manual recipients)

*s/Karen Cody-Hopkins*