IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02142-WYD-BNB

CHARLES D. SWANSON, derivatively on behalf of JANUS CAPITAL GROUP, INC.,

Plaintiff,

v.

RICHARD M. WEIL,
STEVEN L. SCHEID,
TIMOTHY K. ARMOUR,
PAUL F. BALSER,
G. ANDREW COX,
JEFFREY J. DIERMEIER,
J. RICHARD FREDERICKS,
DEBORAH R. GATZEK,
LAWRENCE E. KOCHARD,
ROBERT T. PARRY,
JOCK PATTON,
GLENN S. SCHAFER,
JONATHAN D. COLEMAN,
GREGORY A. FROST,
JAMES P. GOFF, and
R. GIBSON SMITH,

Defendants.

and

JANUS CAPITAL GROUP, INC.,

Nominal Defendant.

---

MEMORANDUM OF LAW IN SUPPORT OF NOMINAL DEFENDANT JANUS CAPITAL
GROUP INC.'S MOTION TO DISMISS

---

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

    A.    The Parties ..................................................................................................... 2

    B.    Janus' Executive Compensation Program and 2011 Proxy.................................. 3

    C.    Litigation ....................................................................................................... 4

ARGUMENT .................................................................................................................. 5

II.    LEGAL STANDARDS ........................................................................................... 5

    A.    Delaware Law Governs................................................................................... 5

    B.    The Business Judgment Rule and Demand Futility under Delaware Law............. 6

III.    PLAINTIFF CANNOT PURSUE THIS ACTION ON BEHALF OF JANUS
BECAUSE HE HAS NOT SUFFICIENTLY PLEADED DEMAND FUTILITY .......... 7

    A.    Plaintiff Fails To Allege Facts Raising a Reasonable Doubt That the
Majority of Directors Is Independent and Disinterested ..................................... 8

        1.    Demand Is Not Excused Based on Approving or Recommending
the 2010 Executive Compensation or Failing to Rescind It ...................... 9

        2.    A Majority of the Board Does Not Face a Substantial Likelihood
of Liability .........................................................................................10

    B.    Plaintiff Fails To Allege Facts Raising a Reasonable Doubt that the
Challenged Compensation Was the Product of Valid Business Judgment ...........13

CONCLUSION...............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) ...................................................................*passim*

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)........................................................*passim* BA_Cite_82

*Desimone v. Barrows*, 924 A.2d 908 (Del. Ch. 2007) .................................................................8

*Dominick v. Marcove*, 809 F. Supp. 805 (D. Colo. 1992)........................................................12

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ..............................................................................6

*Grobow v. Perot*, 539 A.2d 180 (Del. 1988) ............................................................................8

*Highland Legacy Ltd. v. Singer*, No. Civ.A. 1566, 2006 WL 741939
    (Del. Ch. Mar. 17, 2006).......................................................................................14

*In re Cox Radio, Inc. S'holders Litig.*, No. CIV. A. 4461, 2010 WL 1806616
    (Del. Ch. May 6, 2010), *aff'd*, 9 A.3d 475 (2010) ......................................................15

*In re Goldman Sachs Grp., Inc. S'holder Litig.*, Civ. A. No. 5215,
    2011 WL 4826104 (Del. Ch. Oct. 12, 2011)........................................................11, 12

*In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808 (Del. Ch. 2005),
    *aff'd*, 906 A.2d 766 (Del. 2006) ...........................................................................13, 14

*In re ms55, Inc.*, No. 10-cv-00042, 2011 WL 1084967 (D. Colo. Mar. 21, 2011).......................6

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991) ............................................................5

*Kenney v. Koenig*, 426 F. Supp. 2d 1175 (D. Colo. 2006)......................................................5, 6

*Litt v. Wycoff*, No. Civ.A. 19083, 2003 WL 1794724 (Del. Ch. Mar. 28, 2003) .......................15

*Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135 (Del. 1997)...................................12, 13

*NECA-IBEW Pension Fund v. Cox*, No. 1:11-CV-451, 2011 WL 4383368
    (S.D. Ohio Sept. 20, 2011)....................................................................................15

*O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902 (Del. Ch. 1999)...................................13

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) .......................................................................6, 7

*Rattner v. Bidzos*, No. Civ.A. 19700, 2003 WL 22284323
    (Del. Ch. Sept. 30, 2003) .......................................................................................10

*Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. 1995)...........................................................8, 10

*Teamsters Local 237 Additional Sec. Benefit Fund v. McCarthy*,
    No. 2011-cv-197841, 2011 WL 4836230 (Ga. Super. Sept. 16, 2011)...............10, 14, 15

*Wood v. Baum*, 953 A.2d 136 (Del. 2008) ............................................................................9, 13

## STATUTES

15 U.S.C. § 78n-1 ........................................................................................ 1, 10, 14

Del. Code Ann. tit. 8, § 141(a) ................................................................................6

Nominal defendant Janus Capital Group Inc. ("Janus" or the "Company") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Verified Shareholder Derivative Complaint ("Complaint") for failure to plead demand futility under Fed. R. Civ. P. 23.1 and controlling Delaware law.

## INTRODUCTION

On July 21, 2010, Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"). Dodd-Frank requires that public companies hold a *non-binding advisory* shareholder vote on executive compensation ("say on pay" vote) at least once every three years. Dodd-Frank, however, may *not* be construed in any of the following ways: (1) as "overruling a decision" by a company's board of directors; (2) as creating or implying "any change to the fiduciary duties" of such directors; or (3) as creating or implying "any additional fiduciary duties" of such directors. 15 U.S.C. § 78n-1(c).

Since the enactment of Dodd-Frank, dozens of companies have failed to obtain majority support in such advisory votes. Over a dozen of these companies have been sued despite the plain language of Dodd-Frank. These "say on pay" cases are based on the faulty premise that a negative say on pay vote somehow "rebuts" the existing legal presumption that the challenged compensation was based on informed, good faith business judgment to which the courts should defer. The present derivative action brought by plaintiff Charles D. Swanson ("Plaintiff") challenging Janus' 2010 executive compensation provides a perfect example of these meritless cases pending across the country. Courts have already dismissed two similar say on pay cases. This Court should dismiss one more.

Although Plaintiff purports to bring this action on behalf of Janus, he concedes that prior to filing suit he did not comply with the requirement of making a pre-litigation demand on Janus' Board. The demand requirement is a critical element of corporate governance law that

recognizes that a company's directors – not its shareholders – manage the company's affairs, including whether a company should pursue litigation.  Because Plaintiff failed to make a demand on Janus' Board, he must plead *particularized facts* sufficient to raise a reasonable doubt that (a) a majority of Janus' directors were motivated by personal interest or lacked independence as to the challenged compensation; or (b) the process by which compensation was set was inconsistent with a valid exercise of business judgment.

The Complaint fails to meet this heightened standard as it fails to allege that any of the directors other than Chief Executive Officer ("CEO") Richard M. Weil stood to benefit from, or lacked independence to consider, the 2010 executive compensation decisions.  Instead, Plaintiff alleges that a majority of the directors were interested in such decisions because they face a substantial likelihood of liability for breaches of their fiduciary duties through their violation of Janus' pay for performance policy and for falsely stating in Janus' proxy that the Board emphasized pay for performance.  Both these allegations are insufficient because the directors did not violate Janus' compensation policies.

Unable to show a majority of directors had a disabling interest or lacked independence, Plaintiff alleges the non-binding advisory say on pay vote rebuts the business judgment rule. This allegation is likewise insufficient based on the plain language of Dodd-Frank.

## BACKGROUND

### A.    The Parties

Janus is a Delaware corporation headquartered in Denver.  Compl. ¶ 20.  Janus is a "publicly owned asset management holding company with approximately $167.7 billion in assets under management." *Id.* ¶ 43.

The Janus Board consists of twelve directors:  Richard M. Weil, Steven L. Scheid, Timothy K. Armour, Paul F. Balser, G. Andrew Cox, Jeffrey J. Diermeier, J. Richard Fredericks,

Deborah R. Gatzek, Lawrence E. Kochard, Robert T. Parry, Jock Patton, Glenn S. Schafer (collectively, "Directors" or "Board").  *Id.* ¶¶ 21-33.  All are independent directors (*i.e.*, not employed by Janus) except Mr. Weil, Janus' CEO.  *See id.*; Ex. A[1] at 6-9.  Each of the Directors has considerable experience and expertise in the business of asset management and managing the affairs of Janus.  *See* Ex. A at 6-9 (director biographies).  In 2010, the Compensation Committee ("Committee") consisted of six independent directors:  Messrs. Armour, Balser, Cox, Kochard, and Patton, and former director Robert Skidelsky.  *Id.* at 12; *see* Compl. ¶¶ 23-25, 29, 31.

In addition to Mr. Weil, the other executive defendants include:  Jonathan D. Coleman, Executive Vice President ("EVP") and Co-Chief Investment Officer ("CIO"); Gregory A. Frost, EVP and Chief Financial Officer; James P. Goff, Director of Research and portfolio manager; and R. Gibson Smith, EVP and Co-CIO.  Compl. ¶¶ 34-38.

Plaintiff alleges that he "is and has been a shareholder of Janus since at least January 2003, and has held his Janus stock from January 2003 to the present."  *Id.* ¶ 19.

B.    **Janus' Executive Compensation Program and 2011 Proxy**

On March 16, 2011, Janus filed its Form DEF 14-A ("Proxy") with the Securities and Exchange Commission ("SEC").  *Id.* ¶ 6; Ex. A.  The Proxy provides 46 pages of detailed information on Janus' 2010 executive compensation.  *See* Ex. A at 28-73.  In particular, it explains how the Committee met six times during fiscal year 2010 and considered market data from the broader investment management industry and Janus' peer group to determine executive compensation in 2010.  *Id.* at 13, 31, 33-34.  The Committee also conferred with senior

---

[1] All references to "Ex. __" refer to exhibits attached to the accompanying Declaration of Angie Young Kim in Support of Defendants' Motions To Dismiss.  The Court may consider these exhibits in ruling on this motion.  *See* Request for Judicial Notice in Support of Defendants' Motions To Dismiss.

management, the human resources department, independent directors from the Board, and an outside compensation consultant.  *Id.* at 31-32, 39.

Janus' compensation program reflects its five key policies:  (1) alignment of executive interests with those of public and fund shareholders; (2) competitive pay; (3) rewarding performance against financial and strategic objectives; (4) meritocracy; and (5) risk management.  *Id.* at 33.  The Proxy further explains that "compensation of all Janus executives depends on a combination of Company and individual performance[.]"  *Id.*; *see* Compl. ¶ 50.

Based on such criteria, the total amount paid to four out of five of Janus' highest paid executives (Messrs. Frost, Coleman, Smith, and Goff) *decreased* from 2009 to 2010.  Ex. A at 47.  As for Mr. Weil, half of his 2010 compensation consisted of a $10 million restricted stock award vesting over three years as an incentive to leave his prior employment as global head of Pacific Investment Management Company LLC.  *Id.* at 9, 47, 51; Compl. ¶ 3.  In evaluating Mr. Weil's individual performance, the Committee noted:

> Mr. Weil's leadership and experience assisted the Company in navigating very difficult industry conditions and an unbalanced economic recovery.  Under his direction, Janus delivered strong financial results for the year including profit growth, enhanced margins, a strengthened balance sheet and positive net flows in the fixed income and Perkins businesses.

Ex. A at 39.

As required by Dodd-Frank, the Proxy included a resolution asking Janus shareholders to cast a non-binding advisory vote in favor of Janus' 2010 executive compensation.  Compl. ¶ 6.  At the annual shareholders meeting on April 29, 2011, a majority of Janus shareholders voted against the approval of the 2010 executive compensation.  *Id.* ¶ 7.  The Board has not since rescinded Janus' 2010 executive compensation.  *Id.* ¶ 10.

## C.   **Litigation**

On August 16, 2011, Plaintiff commenced this purported derivative action against nominal defendant Janus, its Board of Directors, and certain executive officers at the

Company.[2]  Plaintiff sued without first making a demand on the Board, instead alleging that a pre-suit demand would have been futile and is therefore excused.  *Id.* ¶ 85.

On November 4, 2011, Plaintiff filed his amended complaint.  The gist of the Complaint is that the Board increased executive compensation in 2010 despite a decline in Janus' stock price.  *Id.* ¶¶ 44-52.  The Complaint asserts five counts.  Count I asserts violation of Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") for false and misleading statements relating to Janus' pay for performance policy.  Counts II, III, and IV allege breach of fiduciary duty in connection with the issuance of false and misleading statements regarding Janus' 2010 compensation, the Board's compensation practices, and the Board's failure to respond to the negative say on pay vote, respectively.  Count V asserts unjust enrichment.

## ARGUMENT

## II.   LEGAL STANDARDS

### A.   **Delaware Law Governs**

Fed. R. Civ. P. 23.1 establishes the procedural requirements for bringing a shareholder derivative action in federal court.  Rule 23.1 requires a complaint to "state with particularity" any "effort by the plaintiff to obtain the desired action from the directors" and "the reasons for not obtaining the action or not making the effort."  In short, a plaintiff must either make a pre-suit demand on a board or plead why such a demand would have been futile.  To determine the substantive law applicable to a failure to make a demand on directors in a derivative action, federal courts must "apply the demand futility exception as it is defined by the law of the State of incorporation."  *Kenney v. Koenig*, 426 F. Supp. 2d 1175, 1180 (D. Colo. 2006) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991)).

---

[2] The first purported derivative action filed in this Court on July 1, 2011 against the same defendants, *Pinsly v. Scheid*, 1:11-cv-01732-WYD-BNB, has been dismissed.

Because Janus is a Delaware corporation (Compl. ¶ 20), "Delaware law will determine whether the plaintiffs in this shareholder derivative action are excused from the demand requirement." *Kenney*, 426 F. Supp. 2d at 1180. Delaware law likewise governs Plaintiff's breach of fiduciary duty and unjust enrichment claims. *See Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (corporation's internal affairs are those "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders"); *In re ms55, Inc.*, No. 10-cv-00042, 2011 WL 1084967, at *5 (D. Colo. Mar. 21, 2011) (applying Delaware law to breach of fiduciary duty claims pursuant to "internal affairs doctrine").

B.      **The Business Judgment Rule and Demand Futility under Delaware Law**

"A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984) (citing Del. Code Ann. tit. 8, § 141(a) ("The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors[.]")), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). "The business judgment rule is an acknowledgement of the managerial prerogatives of Delaware directors under Section 141(a). It is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in best interests of the company." *Aronson*, 473 A.2d at 812 (internal citation omitted).

"By its very nature the derivative action impinges on the managerial freedom of directors." *Id.* at 811. Thus, the right of a stockholder to prosecute a derivative action is "limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). This threshold requirement is to ensure that a stockholder exhausts his intracorporate remedies and to prevent against strike suits. *Aronson*, 473 A.2d at 811-12.

Under *Aronson*, where a shareholder files a suit challenging an affirmative decision of the board without first making a demand, demand is excused only if the plaintiff pleads particular facts creating a reasonable doubt that: (1) a majority of directors is disinterested and independent, or (2) the transaction was the product of a valid exercise of business judgment. *Id.* at 814. By contrast, where no specific board action is challenged, a plaintiff must plead "particularized facts creating a reasonable doubt that a majority of the Board would be disinterested or independent in making a decision on a demand" as of the time the complaint is filed. *Rales*, 634 A.2d at 930, 934. In other words, only the first part of the *Aronson* test applies where the plaintiff does not challenge a board action. *Id.* at 933-34.

## III. PLAINTIFF CANNOT PURSUE THIS ACTION ON BEHALF OF JANUS BECAUSE HE HAS NOT SUFFICIENTLY PLEADED DEMAND FUTILITY

Having admitted that he failed to make a pre-suit demand, Plaintiff alleges that a demand would have been futile because: (1) the Board unanimously recommended that Janus' shareholders approve the 2010 executive compensation and failed to take any action once their recommendation was rejected, thereby demonstrating its "hostility to this action"; (2) each of the Directors has been named as a defendant in this action; (3) the Directors are liable "for breaches of their fiduciary duties through their violation of Janus's pay-for-performance policy" and for "participat[ing] in issuing materially false and misleading statements" in the Proxy; (4) Mr. Weil has a disqualifying interest as a recipient of the 2010 compensation and lacks independence based on his employment as Janus' CEO; (5) the Committee faces a substantial likelihood of liability for their breach of fiduciary duty for awarding and not rescinding the 2010 compensation; (6) the business judgment protection is rebutted by the adverse say on pay vote; and (7) the 2010 compensation decisions are not protected by the business judgment rule because they "violated Janus's pay-for-performance policy[.]" Compl. ¶¶ 85-95.

None of these allegations sufficiently pleads demand futility.  In analyzing them below, the *Aronson* test applies to Plaintiff's challenge to affirmative decisions to approve the 2010 executive compensation, recommend it to shareholders, and issue the Proxy.  *Id.* ¶¶ 86-88, 92, 95.  The *Rales* test applies to Plaintiff's remaining allegations regarding failure to rescind the compensation or otherwise respond to the say on pay vote.  *Id.* ¶¶ 86, 88-89, 92, 95.

A.   **Plaintiff Fails To Allege Facts Raising a Reasonable Doubt That the Majority of Directors Is Independent and Disinterested**

"Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences."  *Aronson*, 473 A.2d at 816; *see Grobow v. Perot*, 539 A.2d 180, 189 (Del. 1988) (to raise reasonable doubt of director independence, plaintiff must allege that "directors were dominated or otherwise controlled by an individual or entity interested in the transaction"), *overruled on other grounds by Brehm*, 746 A.2d 180.  Because the Complaint does not challenge the independence of any director other than Mr. Weil (*see* Compl. ¶¶ 86-95), Plaintiff concedes the independence of a majority of the Directors.

"A director is interested if he will be materially affected, either to his benefit or to his detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders."  *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995).  A plaintiff may not simply make allegations against directors as group, or members of certain board committees, but rather must plead facts showing disabling interest "specific to each director."  *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007).

Here, the Complaint neither engages in a director-by-director analysis, nor demonstrates that a majority of the Board had any disabling interest.  The Complaint fails to allege that any of the Directors other than Mr. Weil stood to benefit from the 2010 executive compensation decisions.  Indeed, as the Complaint concedes, eleven of the twelve Directors – including all who served on the Committee – are outside directors not employed by Janus.  Compl. ¶¶ 21-33; Ex. A at 6-9, 12.  Thus, a majority of the Directors and the entire Committee did not "appear on both

sides of a transaction nor expect to derive any personal financial benefit" from the 2010 compensation decisions. *Aronson*, 473 A.2d at 812.

> ### 1. Demand Is Not Excused Based on Approving or Recommending the 2010 Executive Compensation or Failing to Rescind It

Plaintiff asserts that demand is excused because: (1) the Committee faces a substantial likelihood of liability for their breach of fiduciary duty for awarding and not rescinding the 2010 compensation; (2) the Board has demonstrated its "hostility to this action" and "antipathy towards the relief sought" by recommending the approval of such compensation and failing to take any action after the adverse shareholder vote; and (3) each of the Directors has been named as a defendant in this action. Compl. ¶¶ 86-88, 92, 95. Delaware courts have repeatedly rejected the circular logic inherent in each of these justifications.

The Delaware Supreme Court has held that such "conclusory" allegations do not plead demand futility: "In Delaware mere directorial approval of a transaction, absent particularized facts supporting a breach of fiduciary duty claim, or otherwise establishing the lack of independence or disinterestedness of a majority of directors, is insufficient to excuse demand." *Aronson*, 473 A.2d at 817; *accord Wood v. Baum*, 953 A.2d 136, 142 & n.18 (Del. 2008); *see Brehm*, 746 A.2d at 257 (it is "no answer to say that demand is necessarily futile" because directors would have to sue themselves or they approved underlying transaction). Indeed, demand requirements "would be meaningless" were courts to presume that "any board approval of a challenged transaction automatically connotes 'hostile interest' and 'guilty participation' by directors, or some other form of sterilizing influence on them." *Aronson*, 473 A.2d at 814.

Nor does the failure to rescind the challenged compensation or otherwise respond to the advisory vote excuse demand. Enacted on July 21, 2010, Section 951 of Dodd-Frank requires that public companies hold a *non-binding advisory* shareholder vote on executive compensation

at least once every three years.  15 U.S.C. § 78n-1(a).  Dodd-Frank provides that such a

shareholder vote:

> shall not be binding on the issuer or the board of directors of an
> issuer, and may not be construed –
> (1) as overruling a decision by such issuer or board of directors;
> (2) to create or imply any change to the fiduciary duties of such
> issuer or board of directors; [or]
> (3) to create or imply any additional fiduciary duties for such
> issuer or board of directors[.]

15 U.S.C. § 78n-1(c).  This language makes clear that Dodd-Frank does not "overrul[e]" a

decision by the Board or "create or imply any additional fiduciary duties" to rescind or otherwise

respond to a say on pay vote.  *Id.*  In light of such clear language, the Court in *Teamsters Local*

*237 Additional Security Benefit Fund v. McCarthy* held "the say on pay vote did not require that

the challenged pay be rescinded and does not support a reasoned inference that any alleged

failure to do so was not a valid business judgment."  No. 2011-cv-197841, 2011 WL 4836230, at

§ III.B.2.b (Ga. Super. Sept. 16, 2011) ("*McCarthy*").

## 2.     A Majority of the Board Does Not Face a Substantial Likelihood of Liability

"The 'mere threat' of personal liability in the derivative action does not render a director

interested; however, a 'substantial likelihood' of personal liability prevents a director from

impartially considering a demand."  *Seminaris*, 662 A.2d at 1354; *see Rattner v. Bidzos*,

No. Civ.A. 19700, 2003 WL 22284323, at *9 (Del. Ch. Sept. 30, 2003) ("Except in 'egregious

circumstances,' the 'mere threat' of personal liability does not constitute a disabling interest for a

director considering a derivative plaintiff's demand.").  Here, Plaintiff alleges that the Directors

are liable "for breaches of their fiduciary duties through their violation of Janus's pay-for-

performance policy" and for "participat[ing] in issuing materially false and misleading

statements" in the Proxy.  Compl. ¶ 87.

Plaintiff's allegations regarding Janus' pay for performance policy fail to establish a

majority of the Board had a disabling interest for three reasons.  First, the business judgment rule

shields the 2010 executive compensation decisions.  Delaware courts have long given broad

discretion to directors with respect to executive compensation.  The Delaware Supreme Court

has held that "a board's decision on executive compensation is entitled to great deference" and

it "is the essence of business judgment for a board to determine if 'a particular individual

warrant[s] large amounts of money[.]'" *Brehm*, 746 A.2d at 263.  "The decision as to how much

compensation is appropriate to retain and incentivize employees, both individually and in the

aggregate, is a core function of a board of directors exercising its business judgment." *In re

Goldman Sachs Grp., Inc. S'holder Litig.*, Civ. A. No. 5215, 2011 WL 4826104, at *14 (Del. Ch.

Oct. 12, 2011).

Second, the Committee did not violate its own policies.  These policies include:

(1) alignment of executive interests with those of public and fund shareholders; (2) competitive

pay; (3) rewarding performance against financial and strategic objectives; (4) meritocracy; and

(5) risk management.  Ex. A at 33.  Plaintiff argues that "the Board inexplicably increased total

executive compensation" when the Company's stock price declined, thereby violating its policy

of providing "a strong and direct link between pay and both Company and individual

performance." Compl. ¶ 112.  Only by equating "performance" with the Company's stock price

can Plaintiff conclude that the Board violated its pay for performance policy.  In doing so,

Plaintiff ignores the Committee's actual metrics for both Company and individual performance.

For the Company, these "performance goals and metrics for 2010 focused on [its] success

as measured by Company profits, net flows and [its] performance against several strategic

initiatives[.]" Ex. A at 37-38.  For each individual, the Committee considered numerous factors,

including market data, individual performance, all components of an officer's compensation,

wealth accumulation analysis, the mix of cash and long-term incentives, the compensation

consultant's advice, and for the CEO, input from other independent directors.  *Id.* at 31-32.

Plaintiff's attempt to substitute the Committee's actual metrics with his own metric,

Janus' share price, should be rejected.  Recently, the Delaware Court of Chancery rejected a

similar argument in a derivative action against the board of Goldman Sachs and dismissed the

complaint.  The Court explained:

> The Plaintiffs do not allege that the board failed to employ a metric
> to set compensation levels; rather, they merely argue that a
> different metric . . . would have yielded a better result.  But this
> observance does not make the board's decision self-evidently
> wrong, and it does not raise a reasonable doubt that the board
> approved Goldman's compensation structure in good faith.

*Goldman*, 2011 WL 4826104, at *2, *14; *see Brehm*, 746 A.2d at 266 ("Plaintiffs' sole argument

appears to be they do not agree with the course of action taken by the Board regarding Ovitz's

separation from Disney.  This will not suffice to create a reasonable doubt that the Board's

decision to grant Ovitz a Non-Fault Termination was the product of an exercise of business

judgment.").  Nor has Plaintiff pleaded particularized facts to raise any doubt that the Committee

applied these Company and individual metrics in good faith in awarding the 2010 executive

compensation.

Plaintiff's disclosure claims fare no better.  Whether pleaded as a breach of fiduciary duty

or a violation of Section 14(a) of the Exchange Act, Plaintiff must plead a material misstatement

or omission.  *See Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 140 (Del. 1997) ("it is

inherent in disclosure cases that the misstated or omitted facts be identified and that the pleading

not be merely conclusory"); *Dominick v. Marcove*, 809 F. Supp. 805, 806 (D. Colo. 1992)

(Section 14(a) makes it "unlawful to solicit proxies with a proxy statement containing materially

misleading statements and omissions of material fact").  But the Complaint does not identify any

supposedly "materially false and misleading statements" other than that the Board "falsely stated

that its compensation committee emphasized 'pay for performance'"; "failed to disclose that the

2010 executive compensation had no meaningful relationship to the Company's performance";

and "conceal[ed] the fact that the Company was overpaying its directors, officers, and employees

via compensation plans premised on an illusory 'pay for performance' executive compensation

scheme" in the Proxy.  Compl. ¶¶ 9, 60-61, 106.

Plaintiff fails to plead any misrepresentation or omission because the Proxy never represented share price as the sole measure of performance relevant to executive compensation. Nor does Plaintiff plead any facts to show the Committee did not award such compensation according to its own policies and metrics. These mischaracterizations of the Proxy "cannot support a claim for violation of the fiduciary duty of disclosure." *O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 925 (Del. Ch. 1999). Moreover, "directors' duty of disclosure does not oblige them to characterize their conduct in such a way as to admit wrongdoing." *Loudon*, 700 A.2d at 143.

Third, to the extent Plaintiff's claims (including his disclosure claim) are based on a breach of care, the Directors are protected by the exculpatory provisions of Janus' certificate of incorporation. This certificate provides that the Directors "shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the Delaware Corporation Law[.]" Ex. B at 8; *see* Ex. C at 3.[3] "Where directors are contractually or otherwise exculpated from liability for certain conduct, 'then a serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the directors based on particularized facts.'" *Wood*, 953 A.2d at 141 (emphasis in original). Here, none of Plaintiff's allegations suggest particularized facts that a majority of the Directors could face liability for breaches of loyalty, bad faith acts, or conduct from which they received an improper personal benefit.

**B.    Plaintiff Fails To Allege Facts Raising a Reasonable Doubt that the Challenged Compensation Was the Product of Valid Business Judgment**

To plead demand futility under the second part of the *Aronson* test, Plaintiff "must plead particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 824 (Del. Ch. 2005),

---

[3] Ex. B is the Amended and Restated Certificate of "Stillwell Financial, Inc." (renamed "Stillwell Financial Inc.") and Ex. C shows that "Stillwell Financial Inc." was renamed "Janus Capital Group Inc."

*aff'd*, 906 A.2d 766 (Del. 2006). "The plaintiff faces a substantial burden, as the second prong of

the Aronson test is 'directed to extreme cases in which despite the appearance of independence

and disinterest a decision is so extreme or curious as to itself raise a legitimate ground to justify

further inquiry and judicial review.'" *Highland Legacy Ltd. v. Singer*, No. Civ.A. 1566, 2006

WL 741939, at *7 (Del. Ch. Mar. 17, 2006).

    Here, the Proxy leaves no doubt the Committee acted on an informed basis in approving

the compensation by meeting six times in fiscal year 2010, considering market data, and

conferring with senior management, the human resources department, other independent

directors, and an outside compensation consultant. Ex. A at 13, 31-34, 39. Indeed, Plaintiff does

not challenge that the Committee or the Board acted on an informed basis. Rather, Plaintiff

attempts to rebut the business judgment rule by alleging the compensation decisions "violated

Janus's pay-for-performance policy" and by pointing to the say on pay vote. Compl. ¶¶ 86, 94.

    Plaintiff's first allegation fails because Plaintiff has not pleaded particularized facts to

doubt the Committee acted honestly and in good faith in either adopting performance metrics or

applying them to award 2010 executive compensation. *See supra* § II.A.2. Plaintiff's other

allegation that the non-binding advisory say on pay vote rebuts the business judgment rule

should be rejected for three reasons.

    First, Dodd-Frank provides that a say on pay vote "may not be construed" as "overruling

a decision by such issuer or board of directors" or to "create or imply any change" or "additional

fiduciary duties for such issuer or board of directors[.]" 15 U.S.C. § 78n-1(c). Thus, a non-

binding advisory say on pay vote does *not* veto the Directors' business judgment.

    Second, Plaintiff's position has already been rejected in two similar say on pay cases

against Delaware corporations. In *McCarthy*, the Court held a negative say on pay vote does not

rebut the business judgment rule. 2011 WL 4836230, at § III.B.2.a (dismissing case). Likewise,

in *Jacobs Engineering Group, Inc. Consolidated Shareholder Derivative Litigation*, the Court

sustained a demurrer, thus rejecting plaintiffs' argument that an adverse say on pay vote rebuts the business judgment presumption.  *See* Ex. D at 2; Ex. E ¶ 2.[4]

Third, the result of the advisory say on pay vote cannot rebut the business judgment presumption because it occurred *after* the Committee approved, and Board recommended, the 2010 executive compensation.  The outcome of a say on pay vote, "which was not known when the challenged decisions were made, does not suggest that, in making those decisions, the directors failed to act on an informed basis, in good faith, and in the honest belief that the decisions were in Beazer's best interests."  *McCarthy,* 2011 WL 4836230, at § III.B.2.a.  This is because Delaware law forbids using events subsequent to the challenged action to second guess a board's business judgment.  *See In re Cox Radio, Inc. S'holders Litig.,* No. CIV. A. 4461, 2010 WL 1806616, at *14 (Del. Ch. May 6, 2010) (data that post-dates challenged transaction "cannot be used to second guess the business judgment of Delaware directors"), *aff'd,* 9 A.3d 475 (2010); *Litt v. Wycoff,* No. Civ.A. 19083, 2003 WL 1794724, at *9 (Del. Ch. Mar. 28, 2003) (board's action must be evaluated "as of the time of that decision").

## CONCLUSION

For the foregoing reasons, Janus respectfully requests that the Court GRANT its motion to dismiss.

Dated:  December 21, 2011

Respectfully submitted,

*/s/ Tamara A. Hoffbuhr Seelman*
John S. Lutz
Tamara A. Hoffbuhr Seelman
FAIRFIELD AND WOODS P.C.
1700 Lincoln Street, Suite 2400
Denver, CO 80203
Phone: (303) 830-2400
Fax:  (303) 830-1033

---

[4] The only other say on pay decision is distinguishable because it was decided under Ohio law.  *See NECA-IBEW Pension Fund v. Cox,* No. 1:11-CV-451, 2011 WL 4383368 (S.D. Ohio Sept. 20, 2011) (denying motion to dismiss).  And that Court issued a subsequent order stating that the decision on the motion to dismiss may be vacated for "having been improvidently granted without subject matter jurisdiction."  Ex. F at 4.

William B. Chandler III
Douglas J. Clark
Ignacio E. Salceda
Angie Young Kim
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
Phone:  (650) 493-9300
Fax:  (650) 493-6811

*Attorneys for Nominal Defendant Janus*
*Capital Group Inc. and Individual Defendants*
*Richard M. Weil, Steven L. Scheid, Timothy K.*
*Armour, Paul F.   Balser, G. Andrew Cox,*
*Jeffrey J. Diermeier, J. Richard Fredericks,*
*Deborah R. Gatzek, Lawrence E. Kochard,*
*Robert T. Parry, Jock Patton, Glenn S.*
*Schafer, Jonathan D. Coleman, Gregory A.*
*Frost, James P. Goff, and R. Gibson Smith*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of December, 2011, I electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF NOMINAL DEFENDANT JANUS CAPITAL GROUP INC.'S MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

clilley@lilleylaw.com
karen@codyhopkinslaw.com
shopkins@zlk.com

*/s/ Susie Duran*
Susie Duran