IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  11-cv-02142-WYD-KLM

CHARLES D. SWANSON, derivatively on behalf of Janus Capital Group Inc.,

     Plaintiff,

v.

RICHARD M. WEIL;
STEVEN L. SCHEID;
TIMOTHY ARMOUR;
PAUL BALSER;
G. ANDREW COX;
JEFFREY DIERMEIER;
J. RICHARD FREDERICKS;
DEBORAH GATZEK;
LAWRENCE KOCHARD;
ROBERT PARRY;
JOCK PATTON;
GLENN SCHAFER;
JONATHAN D. COLEMAN;
GREGORY A. FROST;
JAMES P. GOFF; and
R. GIBSON SMITH,

     Defendants,

JANUS CAPITAL GROUP INC.,

     Nominal Defendant.

---

## ORDER

---

I.    <u>INTRODUCTION</u>

    This is a shareholder derivative action purportedly brought by Plaintiff Charles

D. Swanson ["Plaintiff"] on behalf of nominal defendant Janus Capital Group, Inc. ["Janus"]

against its directors and certain executive officers.  The Amended Verified Shareholder Derivative Complaint [hereinafter "complaint"] asserts claims of breach of fiduciary duty, violation of the Securities Exchange Act of 1934 ["the Exchange Act"], and unjust enrichment.  These claims relate to the Janus Board's approval of, and Janus executive officers' receipt of, 2010 executive compensation payments.  Plaintiff alleges that these payments were excessive and unwarranted in light of Janus' dismal 2010 financial performance.  Plaintiff also alleges that the Board made false and misleading statements in Janus' Definitive Proxy Statement on Schedule 14A ["Proxy"].

There are two pending motions to dismiss before the Court:  Nominal Defendant Janus' Motion to Dismiss and the Individual Defendants' Motion to Dismiss.  Janus seeks to dismiss the Complaint on the basis that Plaintiff did not make a pre-litigation demand on Janus' Board of Directors and has allegedly failed to meet the stringent requirements for showing how such a demand would have been futile.

The individual Defendants join Janus' motion, and also seek to dismiss the Complaint on the basis that the claims for breach of fiduciary duty, violation of section 14(A) of the Exchange Act, and unjust enrichment fail to state a claim upon which relief can be granted.  They assert that "[t]he Complaint is one of over a dozen meritless, cookie-cutter complaints filed across the country in the wake of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), enacted by Congress on July 21, 2010." (Memo. of Law in Supp. of Individual Defs.' Mot. to Dismiss  at 1.)  Dodd-Frank "requires that public companies hold a non-binding advisory shareholder vote on executive compensation at least once every three years (an advisory "say on pay" vote.)  (*Id.*)

Plaintiff contends in response that his complaint details facts demonstrating that Janus' Board has acted directly against the best interests of Janus' shareholders and harmed Janus by giving excessive compensation to its senior executives in violation of Janus' own stated pay for performance plan.  He argues that not only has he sufficiently pled that Defendants are liable, he has also alleged sufficient facts to establish that demand on the Board is excused as futile (or at least to raise the requisite reasonable doubt that the Board would impartially consider a demand).  Finally, Plaintiff argues that he has alleged sufficient facts to support his claims and that the individual Defendants' motion to dismiss pursuant to Rule 12(b)(6) should be denied.

II.   FACTUAL BACKGROUND

Plaintiff alleges that he "is and been a shareholder of Janus since at least January 2003, and has held his Janus stock from January 2003 to the present."  (Am. Verified Compl. ["Compl."] ¶ 19.)  Janus is a Delaware corporation headquartered in Denver.  (*Id.* ¶ 20.)  Janus is a "publicly owned asset management holding company with approximately $167.7 billion in assets under management."  (*Id.* ¶ 43.)

The Janus Board consists of twelve directors.  (Compl. ¶¶ 21-33; Decl. of Angie Young Kim in Supp. of Defs.' Mot. to Dismiss ["Kim Decl."], Ex. A at 6-9.)[1]  All are independent directors (*i.e.*, not employed by Janus) except Richard M. Weil ["Weil"], Janus'

---

[1]  While Janus and the Individual Defendants have referred to documents outside the pleadings in connection with their motions, I can consider these documents without converting the motions into motions for summary judgment.  Janus' Proxy filed with the Securities and Exchange Commission ["SEC"] on March 16, 2011 (Ex. A to Kim Declaration) may be considered because the complaint refers to this document and it is central to the claims.  *See Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005).  Further, I may take judicial notice of the authenticated certificates filed with the Delaware Secretary of State (Exs. B-C to Kim Declaration) as they as public records.  *Tal v. Hogan*, 453 F.3d 1244, 1264-65 & n. 24 (10th Cir. 2006).

CEO.  (*Id.*)  In 2010, the Compensation Committee consisted of six independent directors (Ex. A to Kim Decl. at 12; Compl. ¶¶ 23-25, 29, 31.)  In addition to Weil, the other executive defendants include:  Jonathon D. Coleman ["Coleman"], Gregory A. Frost ["Frost"], James P. Goff ["Goff"], and R. Gibson Smith ["Smith"].  (Compl. ¶¶ 34-38.)

On March 16, 2011, Janus filed its Proxy with the SEC.  (Compl. ¶ 6; Ex. A to Kim Decl.)   The Proxy provides 46 pages of information on Janus' 2010 executive compensation.  (Ex. A to Kim Decl. at 28-73.)  It states that the Compensation Committee met six times during fiscal year 2010, and considered market data from the broader investment management industry and Janus' peer group to determine executive compensation in 2010.  (*Id.* at 13, 31, 33-34.)  It also notes that the Committee conferred with senior management, the human resources department, independent directors from the Board, and an outside compensation consultant.  (*Id.* at 31-32, 39.)  According to the Proxy, Janus' compensation for its executives reflects Janus' five key policies: (1) alignment of executive interests with those of public and fund shareholders, (2) competitive pay, (3) rewarding performance against financial and strategic objectives, (4) meritocracy, and (5) risk management.  (*Id.* at 33.)  It also states that "[c]ompensation of all Janus executives depends on a combination of Company and individual performance".  (*Id.*; *see also* Compl. ¶ 50.)

Janus asserts that the total amount paid to four of five of Janus' highest paid executives (Frost, Coleman, Smith and Goff) decreased from 2009 to 2010.  (Ex. A to Kim Decl. at 49.)  As for Weil, half of his 2010 compensation consisted of a $10 million restricted stock award vesting over three years as an incentive to leave his prior

employment.  (*Id.* at 9, 47, 51; Compl. ¶ 3.)  In evaluating Weil's individual performance, the Committee noted:

> Mr. Weil's leadership and experience assisted the Company in navigating very difficult industry conditions and an unbalanced economic recovery. Under his direction, Janus delivered strong financial results for the year including profit growth, enhanced margins, a strengthened balance sheet and positive net flows in fixed income and Perkins businesses.

(Ex. A to Kim Decl. at 39.)

In response, Plaintiff points out Janus stated in the Proxy that the Company's "pay for performance" policy is designed to "provide a strong and direct link between pay and both Company and individual performance." (*See* Compl. ¶¶ 50, 61, 97.)  Additionally, the Board represented that "the compensation of our most senior executives, those who have the greatest ability to influence Janus' performance, should be primarily based on Company and individual performance – an approach that reinforces the alignment of interests between our executives and our public and fund shareholders." (*Id.* ¶¶ 50, 97; *see also* Ex. A to Kim Decl. at 33.)

The complaint alleges that rather than adhere to Janus' performance-based executive compensation plan, the Board awarded Weil, Coleman, Frost, Goff and Smith substantial bonuses for their *underperformance.* (Compl. ¶¶ 3-4, 51-56.)  It is also alleged that the Board drastically increased executive compensation in the aggregate by 41% for 2010, including more than $20 million to Weil upon his appointment on or about February 1, 2010, $10 million of which he received before even performing a single duty.  (*Id.*)  The total compensation award of $40 million represented approximately 30% of Janus' net income and 2% of its average market value during 2010.  (*Id.* ¶¶ 3, 12. )

Further, it is alleged that the Board increased compensation notwithstanding the fact that Janus' stock price declined by 7% in 2010 and underperformed the Dow Jones by 16% in 2010 at the hands of these executives. (Compl. ¶ 4.)  The price of Janus' stock has not recovered and was down more than 50% from 2009. (*Id.* ¶ 2.)  Weil admitted in a May 2011 article entitled "Janus CEO Weil faces uphill climb in 2nd year on job" that "[w]e know that we haven't yet delivered the results that we need to deliver." (*Id.* ¶ 58.)[2]

As required by Dodd-Frank, the Proxy included a resolution asking Janus shareholders to cast a non-binding advisory vote in favor of Janus' 2010 executive compensation. (Compl. ¶ 6.)  At the annual shareholder meeting on April 29, 2011, a majority of Janus shareholders voted against the approval of the 2010 executive compensation. (*Id.* ¶ 7.)  Plaintiff asserts that Janus' shareholders soundly rejected the Board's 2010 executive compensation plan, with approximately 59.89 million shares voted against the compensation recommended by the Board. (*Id.*)  The Board has not since rescinded Janus' 2010 executive compensation. (*Id.* ¶ 10.)

III.   ANALYSIS

Fed. R. Civ. P. 23.1 establishes the procedural requirements for bringing a shareholder action in federal court. It requires a complainant to "state with particularity" any "effort by the plaintiff to obtain the desired action from the directors" and "the reasons for not obtaining the action or not making the effort." *Id.* Here, Plaintiff did not make a demand

---

[2]  The complaint further alleges that an article in the New York Times on June 18, 2011, entitled "Paychecks as Big as Tajikistan" (the "NY Times Article"), stated that Janus "topped the list" of companies that compensated executives irrespective of performance, noting Janus was the worst offender of companies examined. (*Id.* ¶ 12.)  Moreover, it is alleged that in 2009, Glass, Lewis & Co. ranked Janus' CEO as being the 15th most overpaid CEO in the country. (*Id.* ¶ 13.)

on Janus' Directors as he argues that such a demand would have been futile.   To determine the substantive law applicable to a failure to make a demand on directors in a derivative action, federal courts must "apply the demand futility exception as it is defined by the law of the State of incorporation." *Kenny v. Koenig,* 426 F. Supp. 2d 1175, 1180 (D. Colo. 2006) (quotation omitted).  Since Janus is incorporated in Delaware, "Delaware law will determine whether [Swanson is] . . . excused from the demand requirement." *Id.*

In support of their arguments regarding whether the futility exception applies, both parties cite the case of *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244, 246 (Del. Supr. 2000).  In *Aronson*, the Delaware Supreme Court stated that "[a] cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation." *Id.* at 811.  It further noted that "[t]he existence and exercise of this power carries with it certain fundamental fiduciary obligations to the corporation and its shareholders." *Id.*

Thus, under Delaware law a shareholder "is not powerless to challenge director action which results in harm to the corporation", as "[t]he derivative action developed in equity to enable shareholders to sue in the corporation's name where those in control of the company refused to assert a claim belonging to it." *Aronson*, 473 A.2d at 811. However, since a derivative action "impinges on the managerial freedom of directors", Delaware law imposes a demand requirement which "exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits." *Id.* at 811-12.

Under Delaware law, the right to pursue a derivative action is "limited to situations where the stockholder had demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993).   Demand may, however, be excused as futile "where officers and directors are under an influence which sterilizes their discretion, [as] they cannot be considered proper persons to conduct litigation on behalf of the corporation." *Aronson*, 473 A.2d at 814.

In determining whether a plaintiff has established demand futility in connection with a board decision, the court "must decide whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814.   Thus, the court "must make two inquiries, one into the independence and disinterestedness of the directors and the other into the substantive nature of the challenged transaction and the board's approval thereof." *Id.*   A plaintiff that meets either prong is excused from making a pre-suit demand. *Weiss v. Swanson*, 948 A.2d 433, 441 (Del. Ch. 2008).   By contrast, where no specific board action is alleged, a plaintiff must plead "particularized facts creating a reasonable doubt that a majority of the Board would be disinterested or independent in making a decision on a demand" as of the time the complaint is filed, *i.e.*, the first part of *Aronson*.  *Rales*, 634 A.2d at 933-34.

Demand futility is "inextricably bound to issues of business judgment." *Aronson*, 473 A.2d at 812, 814.  "The business judgment rule is an acknowledgment of the managerial

prerogatives of Delaware directors. . . . ." *Id.* at 812. "It is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company". *Id.* As explained recently by the Delaware Court of Chancery, the business judgment rule "is respectful to director prerogatives to manage the business of a corporation; in cases where it applies, courts must give 'great deference' to directors' decisions and, as long as the Court can discern a rational business purpose for the decision, it must not 'invalidate the decision. . . examine its reasonableness, [or] substitute [its] views for those of the board.' *In re Smurfit-Stone Container Corp. S'holder Litig*, C.A. No. 6164, 2011 WL 2028076, at *11 (Del. Ch. May 24, 2011) (quotation omitted). The burden is on the party challenging the decision [of the Board] to establish facts rebutting the presumption." *Aronson*, 473 A.2d at 812.

Since *Aronson*, the Delaware courts have made clear that pleadings in derivative suits "must comply with stringent requirements of factual particularity." *Brehm*, 746 A.2d at 246. Indeed, as *Aronson* stated, "[u]nless facts are alleged with particularity to overcome the presumptions of independence and a proper exercise of business judgment, in which case the directors could not be expected to sue themselves, a bare claim of this sort raises no legally cognizable issue under Delaware corporate law." *Id.*

In the case at hand, I first must determine whether Plaintiff has presented particularized factual allegations that create a reason to doubt that the Janus Board would consider the demand in a disinterested, impartial manner. *Aronson*, 473 A.2d at 814. The complaint alleges in that regard that "the entire Janus Board is interested in the outcome

of this litigation as each of the directors is liable for breaches of their fiduciary duties through their violation of Janus's pay-for-performance policy." (Compl. ¶ 87.) Plaintiff also alleges that "Defendants Patton, Armour, Balser, Cox, and Kochard are interested in a demand as a result of their conduct on the Compensation Committee." (*Id.* ¶ 92.) Plaintiff has not, however, alleged any facts to show that any director other than Weil, who received compensation from the Board's decision, stood to benefit from, or lacked independence to consider, the 2010 executive compensation decisions.[3]  Thus, he has failed to create a reasonable doubt through particularized facts that a majority of the Board was actually "tainted by interest" or "lacked independence", or that the directors were dominated or controlled in some manner. *Aronson*, 473 A.2d at 814, 818; *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995).  Instead, his allegations are conclusory on this issue.[4]

Plaintiff also argues, however, that he has presented facts which raise a reasonable doubt as to the disinterestedness of the Board because he demonstrated that it is subject to a substantial likelihood of liability for breaches of fiduciary duty and/or loyalty related to the 2010 executive compensation program.  He asserts that the approval of the executive compensation program despite the shareholders' express rejection of it "constituted an 'intentional dereliction of duty' and 'a conscious disregard for one's responsibilities,' each

---

[3]  Weil himself was not a member of the Compensation Committee.

[4]  Plaintiff has, in fact, alleged a number of conclusory allegations in support of his assertion that demand is excused based on futility.  For example, he alleges that demand is excused as "a majority of the Board either was at fault for the misconduct described herein and/or is liable for the misconduct described herein", and are thus "disabled as matter of law from objectively considering any pre-suit demand. . . ." (Compl. ¶ 93.)  Further, he alleges that "the Board has openly demonstrated its hostility to this action" and that "the directors have exhibited antipathy towards the relief sought herein . . . ." (*Id.* ¶¶ 88, 95.)

of which is 'properly treated as a non-exculpable, non-indemnifiable violation of the fiduciary duty to act in good faith.'" (Pl.'s Br. in Opp'n to Janus Capital Group's Mot. to Dismiss [Opp'n to Janus' Mot."] at 10) (quotations omitted.)

In support of his argument, Swanson cites *Ryan v. Gifford*, 918 A.2d 341, 355 (Del. Ch. 2007), which held that "[d]irectors who are sued have a disabling interest for pre-suit demand when 'the potential for liability is not a mere threat but instead may rise to a substantial likelihood'". *See also Seminaris,* 662 A.2d at 1354. This ties into the business judgment rule, related to the second prong of *Aronson*, since "a showing that the board breached either its fiduciary duty of due care or its fiduciary duty of loyalty may rebut" the "'presumption that in making a business decision the directors . . .acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company'". *Ryan*, 918 A.2d at 357 (quoting *Aronson*, 473 A.2d at 812). Indeed, a complaint that "alleges bad faith and, therefore, a breach of the duty of loyalty" is "sufficient to rebut the business judgment rule and survive a motion to dismiss." *Id.*

Thus, I turn to the factual allegations to determine whether Plaintiff has shown a substantial likelihood of merits on his claims. I also analyze whether Plaintiff has alleged particularized facts which create a reasonable doubt that the challenged transaction was otherwise the product of a valid exercise of business judgment. On the latter issue, I note that Plaintiff must plead "particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." *In Re JP Morgan Chase & Co. S'holder Litig.,* 906 A.2d 808, 824 (Del. Ch. 2005).

I first find that Plaintiff has not alleged facts creating a reasonable doubt that the Janus Board was adequately informed in making the decision.  Thus, Plaintiff has not shown that during the informational component of the directors' decisionmaking process, Janus' directors failed to consider all material information reasonably available.  *See Brehm*, 746 A.2d at 259.  Indeed, he has not even presented a challenged on this issue. Thus, I turn to Plaintiff's actual assertions.

Plaintiff asserts that the Board granted top executive pay raises of 41% in 2010 at a time when the Company's stock price was declining.  He argues in that regard that "Janus stock *declined* 7% in 2010 and underperformed the Dow Jones (which *increased* by 9%), by 16% in 2010 at the hands of these executives."  (Opp'n to Janus' Mot. at 1.)  Plaintiff also asserts that Janus' performance was markedly negative, and that the Board nevertheless granted an extravagant outlay of assets equal to approximately 30% of the Company's total net income for the year.  (*See id.*; Compl. ¶ 86).

Janus responds that total compensation for the top five executives increased by 34%, not by 41% as Plaintiff claims.  Further, Plaintiff has not disputed Janus' assertion that this increase is almost entirely attributable to the one-time signing bonus for Weil.  Half of Weil's 2010 compensation consisted of a $10 million restricted stock award vesting over three years as an incentive to leave his prior employment.  Excluding this one-time award, Janus has shown that compensation for the top five executives increased by less than 1% in 2010.  And the total amount paid to four out of five of Janus' highest paid executives (Frost, Coleman, Smith, and Goff ) *decreased* from 2009 to 2010.  (Ex. A to Kim Decl. at 47.)

Nonetheless, even if I assume Plaintiff's numbers are accurate, I find that they fail to show a substantial likelihood of liability or create a reasonable doubt that the challenged transactions were the product of a valid exercise of business judgment.  Plaintiff relies primarily on the case of *NECA-IBEW Pension Fund ex rel. Cincinnati Bell, Inc. v. Cox*, No. 11-cv-451, 2011 WL 4383368 (S.D. Ohio Sept. 20, 2011), arguing that the directors' actions in this case mirror those at issue in that case.  In *Cincinnati Bell*, the court found at the dismissal stage under similar facts that the plaintiff's allegations "create a reasonable doubt that the challenged transaction [related to 2010 executive pay hikes] is the result of a valid business judgment" and excused a demand on the board as futile.  *Id.* at *3-4[5]

I find that the *Cincinnati Bell* case is not persuasive and decline to follow its holding. First, its validity has been called into doubt because the court apparently lacked subject matter jurisdiction and the plaintiff failed to disclose contrary authority in response to the court's specific inquiry.  *See Plumbers Local No. 137 Pension Fund v. Davis,* No. 03:11-633, 2012 WL 104776, at *5 (D. Or. Jan. 11, 2012), *adopted as the district court's opinion*, 2012 WL 602321 (D. Or. Feb. 23, 2012).  More importantly, it was analyzed under Ohio law, "which is different from Delaware law", *id.* at *7, and I find that Delaware law does not support its holding.

---

[5]  As to futility, the court stated, "[g]iven that the director defendants devised the challenged compensation, approved the compensation, recommended shareholder approval of the compensation, and suffered a negative shareholder vote on the compensation, plaintiff has demonstrated sufficient facts to show that there is reason to doubt these same directors could exercise their independent business judgment over whether to bring suit against themselves for breach of fiduciary duty in awarding the challenged compensation. *Id.* at *4.  The court concluded, "at the dismissal stage, that plaintiffs' allegations create a reasonable doubt that the challenged transaction is the result of a valid business judgment, and, accordingly, the directors possess a disqualifying interest sufficient to render pre-suit demand futile and hence unnecessary."  *Id.*

Delaware courts hold "that a board's decision on executive compensation is entitled to great deference" as "the size and structure of executive compensation are inherently matters of judgment." *Brehm*, 746 A.2d at 263. "It is the essence of business judgment for a board to determine if 'a particular individual warrant[s] large amounts of money, whether in the form of current salary or severance provisions.'" *Id.* (quotations and internal quotation marks omitted). Thus, if there "'is *any substantial* consideration received by the corporation, and if there is a *good faith judgment* that in the circumstances the transaction is worthwhile, there should be no finding of waste, even if the fact finder would conclude *ex post* that the transaction was unreasonably risky." *Id.* (emphasis in original) (quotation omitted). While there are "outer limits" to this rule, "they are confined to unconscionable cases where directors irrationally squander or give away corporate assets." *Id.*

Thus, under Delaware law, the fact that executives "received substantial salaries during a period when [the company] was performing poorly would not, without more, ordinarily sustain a claim." *Prod. Res. Grp., L.L.C. v. NCT Grp. Inc.*, 863 A.2d 772, 799 (Del. 2004). Consistent with this, pleadings claiming that no person "acting in good faith on behalf of [the company] consistently could approve the payment of between 44% and 48% of net revenues to [the company's] employees year in and year out . . . f[e]ll far short of creating a reasonable doubt that the Director Defendants" failed to exercise their business judgment. *In Re Goldman Sachs Grp. Inc. S'holder Litig.*, No. 5215, 2011 WL 4826104, at *13 (Del. Ch. Oct. 12, 2011). Also, the fact that the total compensation paid to the top five executives of a company increased in 2010 due the hire of a new CEO who was awarded "an extremely lucrative contract" has also been held to be unremarkable by

the Delaware court, since the board "determined it had to offer an expensive compensation package to attract [the CEO] and . . . determined he would be valuable to the Company." *Brehm*, 746 A.2d at 250, 263-64.

I also find persuasive the *Davis* case from the federal district court in Oregon which applied Delaware law to a 2010 executive compensation program. 2012 WL 104776, at *5. That program "increased the compensation for each executive officer by approximately 60 up to 160 percent" even though the company's "return to shareholders was a negative 7.7 percent" that year. *Id.* at *2. The court held that the plaintiffs failed to meet their burden with respect to the presuit demand requirement and the claims were dismissed. It noted "that compensation determinations are typically within the business judgment of the board" and found "that the Plaintiffs' allegations regarding the board's compensation decision in this case are not sufficient to overcome the presumption that the board exercised business judgment." *Id.* at *7. In so finding, it noted that the plaintiffs' "essential position is that if a simple comparison reveals a level of compensation inconsistent with general corporate performance, the business judgment presumption is necessarily overcome, a position that is unsupported by the applicable standards." *Id.*[6]

Based on the foregoing authority, I reject Plaintiff's argument that the executive compensation paid in 2010 when a period when the company's stock price was declining and the company's performance was negative excuses a demand on the Janus Board.

---

[6] Similarly, in *Teamsters Local 237 Additional Sec. Benefit Fund v. McCarthy*, No. 2011-cv-197841, 2011 WL 4836230 (Ga. Sup. Ct. Sept. 16, 2011), a case applying Delaware law, the court found that demand was not excused where the company gave pay raises in 2010 to its four most highly compensated executives, even though it suffered a net loss of $34 million and annual share price return of -17.23%, both of which plaintiffs alleged fell below industry averages.

Plaintiff also asserts, however, that the facts alleged in the complaint demonstrate that the Board acted directly against the best interests of Janus' shareholders and harmed Janus by giving excessive compensation to its senior executives in violation of Janus' own stated pay for performance plan, *i.e.*, that it would reward Janus' executives only if they achieved "strong performance against financial and strategic (non-financial) objectives". (*See* Compl. ¶¶ 86, 87, 92.) He further asserts that the Board "misrepresented to shareholders that [Janus] supposedly pays for performance while nevertheless granting lavish awards in the face of failure" (Opp'n to Janus' Mot. at 9), and made misrepresentations in Janus' 2011 Proxy. ( Compl. ¶ 87.)  This argument is likewise unavailing, both in terms of showing a substantial likelihood of liability as well as creating a reasonable doubt that the challenged transaction is the result of a valid business judgment.

First, as noted by Janus, the Proxy states that the Compensation Committee never equated "performance" solely with Janus' share price, but rather based compensation on a number of considerations. (Ex. A to Kim Decl. at 28-73.)  Second, while Plaintiff attempts to equate "performance" with Janus' stock price, he ignores the actual metrics for both Company and individual performance.  For Janus, these "performance goals and metrics for 2010 focused on [its] success as measured by Company profits, net flows and [its] performance against several strategic initiatives[.]" (*Id.* at 37-38.)  For each individual, the Committee also considered numerous factors.  (*Id.* at 37-38.)  Plaintiff has not pleaded particularized facts to raise any doubt that the Committee applied these metrics in good faith in awarding the 2010 compensation, or that the criteria were mischaracterized.

I again find the *Davis* case instructive on that issue.  In rejecting a similar argument, *Davis* noted that "the board's actions do not directly defy or violate any Umpqua bylaw, any shareholder agreement, or any legally mandated disclosure or reporting requirement. . . [i]nstead, Plaintiffs rely on a policy, pay for performance, that does not establish a binding standard for compensation."  2012 WL 104776, at *7.  That analysis applies equally here.  *Davis* also found that an "allegation that the board violated the pay for performance policy" or that the board made a material misrepresentation with respect to pay for performance "is not sufficient to overcome the business judgment presumption." *Id.* at *8.  While it noted that in specific instances "the presumption may be overcome where a board of directors, although acting within the letter of a stockholder-approved plan, engages in deceptive conduct or misrepresents the true nature of its actions", it found that those facts did not exist in that case and that the plaintiffs did not adequately plead demand futility. *Id.*  It stated on that issue:

> . . . that the board's compensation decision does not square with Plaintiffs' interpretation of the pay for performance policy is not the equivalent of an allegation that the board intentionally misled shareholders that it would follow the policy when, instead, it had no intention of doing so. Again, there must be particularized facts supporting reasonable doubt that the board acted in good faith or upon sufficient information. Here, the complaint's allegations do not dispel the presumption that the board's compensation decision can be attributed to any rational business purpose. For these reasons, the challenged action is protected by the business judgment rule for purposes of presuit demand analysis and Plaintiff fails to meet the second Aronson prong.

*Id.*  Again, I find this analysis equally applicable here.

Plaintiff's disclosure claims fare no better, as he has not shown a substantial likelihood of liability as to same.  Whether pleaded as a breach of fiduciary duty or a

violation of Section 14(a) of the Exchange Act, Plaintiff must plead a material misstatement or omission. *See Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 140 (Del. 1997). While Plaintiff alleges that the Board "falsely stated that its compensation committee emphasized 'pay for performance'", "failed to disclose that the 2010 executive compensation had no meaningful relationship to the Company's performance"; and "conceal[ed] the fact that the Company was overpaying its directors, officers, and employees via compensation plans premised on an illusory 'pay for performance' executive compensation scheme" in the Proxy (Compl.¶¶ 9, 60-61, 106), he has not plead facts that create a reasonable doubt that the Committee violated its own policies and metrics in awarding performance. Further, he has failed to raise a reasonable doubt that the Board applied these metrics in bad faith in awarding the 2010 compensation. Finally, the Proxy did not represent that share price was the sole measure of performance relevant to executive compensation. *See O'Reilly v. Transworld Healthcare, Inc.*, 945 A.2d 902, 925 (Del. Ch. 1999) ("[m]ischaracterizations of the Proxy Statement cannot support a claim for violation of the fiduciary duty of disclosure").

Plaintiff argues, however, that he need not make a demand or show a substantial likelihood of liability in connection with his Section 14(a) claim because whether or not to comply with proxy rules is not a matter of business judgment, citing *Seinfeld v. Barrett*, Civ. A. No. 05-298-JFF, 2006 WL 890909, at *3 (D. Del. March 31, 2006) and *In Re Westinghouse Sec. Litig.*, 832 F. Supp. 989, 997-98 (W. D. Pa. 1993). *Seinfeld* does not, however, say that demand is *per se* excused for a Section 14(a) claim. Instead, in *Seinfeld*, the Court concluded that demand was excused under the second part of the

*Aronson* test where the plaintiff alleged that defendants falsely promised shareholders tax deductions.  2006 WL 890909, at *3.  To the extent *Westinghouse* takes a different approach, the weight of authority does not support this holding.  *See In re CNET Networks, Inc. S'holder Derivative Litig.*, 483 F. Supp. 2d 947, 966 (N.D. Cal. 2007) (citing cases); *Britton v. Parker*, Nos. 06-cv-01797, 06-cv-1922, 06-cv-02017, 2009 WL 3158133, at *6 n.8 (D. Colo. Sept. 23, 2009); *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 606 n.17 (S.D.N.Y. 2007).[7]

Plaintiff also asserts that Defendants should not be rewarded for Janus' "poor performance.  Moreover, they should not be permitted to rely on broad, subjective factors, as here, to escape liability."  (Pl.'s Br. in Opp'n to Individual Defs.' Mot. at 12 n.8.)  Again, Plaintiff seeks to avoid the mandates of Delaware law.  As the Court of Chancery stated in rejecting the argument that Goldman Sachs' compensation program may not be perfectly aligned with shareholder interests: "This may be correct, but it is irrelevant. The fact that the Plaintiffs may desire a different compensation scheme does not indicate that equitable relief is warranted." *Goldman*, 2011 WL 4826104, at *14; *see also Brehm*, 746 A.2d at 266

---

[7] I also agree with the Individual Defendant that Plaintiff has failed to show loss causation in connection with his Exchange Act claim.  *See Dominick v. Marcove*, 809 F. Supp. 805, 807 (D. Colo. 1992) ("To prove that a proxy misstatement caused a shareholder's damages the proxy solicitation must have been the essential causal link in accomplishing the proposed action".).  To show loss causation, the proxy must solicit "votes legally required to authorize the action proposed." *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991); *see also Dominick*, 809 F. Supp. at 807 (essential link cannot be proven where approval by minority shareholders not legally required to authorize transaction).  Here, the advisory non-binding 'say on pay' votes solicited by the Proxy were not legally required to authorize the award of the executive compensation, the only loss Plaintiff claims.  Plaintiff does not dispute this.  Instead, he argues the Proxy was the "essential link" that caused the "harm of a misinformed shareholder vote on executive compensation."  (Opp'n to Indiv. Def.'s Mot. at 18.)  But there is no such "harm" because the vote was purely advisory – no corporate action was authorized.  In addition, Plaintiff fails to explain how the allegedly misleading statements tainted the vote given that shareholders voted *against* the proposal.  In other words, Plaintiff has failed to plead that misrepresentations in the Proxy caused the loss. *See Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 932-33 (3d Cir. 1992*); Britton v. Parker*, Nos. 06-cv-01797, 06-cv-1922, 06-cv-02017, 2009 WL 3158133, at *11 (D. Colo. Sept. 23, 2009).

("mere disagreement cannot serve as grounds for imposing liability based on alleged breaches of fiduciary duty").

Thus, I turn to Plaintiff's argument that the adverse vote by Janus' shareholders is "powerful evidence" that the Directors "breached their existing, well-established fiduciary duties of loyalty and good faith." (Opp'n to Janus' Mot. at 8; *see also* Compl. ¶¶ 88, 92, 94-95.) Dodd-Frank expressly states, however, that such a vote may not be construed "to create or imply any change" to existing fiduciary duties. 15 U.S.C. § 78n-1(c)(2). In rejecting a similar argument, a Georgia court stated, "[g]iven that Delaware law, which Dodd-Frank explicitly declined to alter, places authority to set executive compensation with corporate directors, not shareholders, this Court will not conclude that an adverse say on pay vote alone suffices to rebut the presumption of business judgment protection." *Teamsters Local 237 Additional Sec. Benefit Fund v. McCarthy*, No. 2011-cv-197841, 2011 WL 4836230 (Ga. Sup. Ct. Sept. 16, 2011).

It is also argued that the Board faces a substantial likelihood of liability for "maintaining the awards despite shareholders' demand to rescind them." (Opp'n to Janus Mot. at 9-10; *see also* Compl. ¶¶ 88, 92, 95.) Plaintiff points to the fact that Janus' shareholders soundly rejected the Board's 2010 executive compensation plan, with approximately 58% voting "against" this at Janus' first Dodd-Frank mandated "say-on-pay" vote on April 29, 2011. This allegedly places Janus as one of only a tiny handful of companies to have its Board's executive compensation plan voted down by shareholders. (*See* Opp'n to Janus Mot. at 5.) According to Plaintiff, "[t]his resounding 'no' vote, combined with the decline in Janus' stock value under the stewardship of the Executive

Defendants, powerfully evidences that the Board acted against the best interests of Janus and its shareholders in hiking the executives' 2010 pay, and, thus, breached its fiduciary duties of loyalty and good faith." (*Id.*) It also confirms, according to Plaintiff, that the Janus Board is not entitled to the business judgment presumption. (*Id.*)

I also reject this argument, as it contradicts the express language of Dodd-Frank and well-established Delaware law. Dodd-Frank states that a shareholder vote does not "overrul[e]" a decision by a board or "create or imply any additional fiduciary duties" to rescind or otherwise respond to a say on pay vote. *See* 15 U.S.C. § 78n-1(c). Given this mandate, the *McCarthy* court held that "allegations that Beazer's Board has not 'rescinded' the challenged 2010 executive compensation since learning the results of the [negative] say on pay vote" do not excuse demand. 2011 WL 4836230 at § III.B.2.b. Similarly, the *Davis* case rejected the plaintiffs' argument "that the shareholder vote rejecting the compensation package is prima facie evidence that the board's action was not in the corporation or shareholders' best interests. . . ." 2012 WL 104776, at *7-8; *see also Jacobs Eng'g Group, Inc. Consol. S'holder Derivative Litig.*, No. BC454543 (Cal. Sup. Ct. March 6, 2012), Ex. L to Def.'s Notice of Additional Supplemental Authority.

I also note that the result of the advisory say on pay vote cannot rebut the business judgment presumption because it occurred *after* the Board approved the 2010 executive compensation. Delaware law forbids using events subsequent to the challenged action to second guess a board's business judgment. *See In Re Cox Radio S'holders Litig.*, No. CIV. A 4461, 2010 WL 1806616, at *14 (Del. Ch. May 6, 2010), *aff'd*, 9 A.2d 475 (2010); *Litt v. Wycoff*, No. Civ.A. 19083, 2003 WL 1794734, at *9 (Del. Ch. March 28, 2003). As

noted in *McCarthy*, the outcome of a say on pay vote, "which was not known when the challenged decisions were made, does not suggest that in making those decisions, the directors failed to act on an informed basis, in good faith, and in the honest belief that the decisions were in [the company's] best interests."  2011 WL 4386238, at § III.B.2.a.

Delaware law also makes clear that shareholder disagreement with a board's business judgment does not suffice to state a breach of fiduciary duty.  Directors "may take good faith actions they believe will benefit stockholders, even if they realize that the stockholders do not agree with them."  *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 655 (Del. Ch. 2008).  This is true even where "many, presumably most, shareholders would prefer the board to do otherwise than it has done."  *Paramount Commc'ns Inc. v. Time Inc.*, Civ. A. Nos. 10866, 10670, 10935, 1989 WL 79880, at *30 (Del. Ch. July 14, 1989), *aff'd*, 571 A.2d 1140 (Del. 1989); *see also Am. Int'l Rent A Car, Inc. v. Cross*, No. 7583, 1984 WL 8204, at *3 (Del. Ch. May 9, 1984) (no *per se* breach of fiduciary duty "for the Board to act in a manner which it may believe is contrary to the wishes of a majority of the company's stockholders").  This is because "directors, rather than shareholders, manage the business and affairs of the corporation."  *Aronson*, 473 A.2d at 811.

Plaintiff further alleges that demand on the Board should be excused "as each of the directors has been named as a defendant in this action. . . ." (Compl. ¶ 87), and that "a majority of the Board either was at fault for the misconduct described herein and/or is liable for the misconduct described herein."  (*Id.* ¶ 93.)  As such, Plaintiff claims that "the Board members are disabled as a matter of law from objectively considering any pre-suit

demand, rendering demand futile and excused." (*Id.*) I find that these allegations are conclusory and are insufficient to meet the demand requirement.

"In Delaware mere directorial control of a transaction, absent particularized facts supporting a breach of fiduciary duty claim, or otherwise establishing the lack of independence or disinterestedness of a majority of directors, is insufficient to excuse demand." *Aronson*, 473 A.2d at 817. The *Aronson* court noted that demand requirements "would be rendered meaningless if "any board approval of a challenged transaction automatically connotes 'hostile interest' and 'guilty participation' by directors. *Id.* at 814. Further, the "mere threat" of personal liability by a director in the derivative action does not render a director interested. *Seminaris*, 662 A.2d at 1354.

Again I find the *Davis* case persuasive on this issue. "The implicit premise of the plaintiffs' argument in *Davis* was "that the self-interest sufficient to trigger demand futility is present whenever board members face the possibility of a lawsuit filed against them in response to a decision or other board action." *Davis*, 2012 WL 104776 at *5. The court noted that under the plaintiff's reasoning "the fact that presuit demand is itself suggestive of impending liability is sufficient to create the type of self-interest that triggers the demand futility exception." *Id*. *Davis* rejected that argument, stating:

> This would permit every derivative action plaintiff to argue that demand is futile and need not be made because no board would be able to act objectively in evaluating a presuit demand. Such a result would effectively erase the demand requirement and negate its purpose.

*Id.*

Finally, Plaintiff argues that a reasonable doubt sufficient to rebut the business judgment rule is created where, as here, Defendants have effectively conceded that demand is futile by failing to respond to a shareholder demand (by a different Janus shareholder).   This demand was allegedly made several months ago based upon substantially similar state law claims.  Again, I reject this argument.  First, this allegation is not made in the complaint, and Plaintiff "cannot rectify [his] pleading deficiencies by asserting new facts in an opposition to a motion to dismiss." *Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010); *see also Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 550 (10th Cir. 1997).  Second, it is clear from Janus' motion and reply that it does not concede the issue of futility.  Finally and importantly, Delaware courts have made clear that an earlier demand made by a different shareholder does not excuse a demand on the board by a plaintiff in a derivative suit.  *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 731 n.2 (Del. 1988); *Decker v. Clausen*, Civ. A. Nos. 10,684, 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989); *See also In re HQ Sustainable Maritime Indus., Inc. Derivative Litig.*, 826 F. Supp. 2d 1256, 1260 n. 4 (W.D. Wash. 2011).  Indeed, as noted earlier, Delaware law forbids using events subsequent to the challenged action to second guess a board's business judgment.  *Cox Radio S'holders Litig.*, 2010 WL 1806616, at *14.

For all of the reasons discussed above, I find that this is not "the rare case, envisioned by the [Delaware] Supreme Court in *Aronson*, where defendants' actions were so egregious that a substantial likelihood of director liability exists." *Seminaris* 662 A.2d at 1354.  I also find that the facts pled by Plaintiff in the complaint fail to raise a reasonable

doubt that the challenged transactions related to the Board's decision on executive compensation in 2010 "was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814. This is not one of those "extreme cases in which despite the appearance of independence and disinterest a decision is so extreme or curious as to itself raise a legitimate ground to justify further inquiry and judicial review.'" *Highland Legacy Ltd. v. Singer*, No. Civ.A. 1566-N, 2006 WL 741939, at *7 (Del. Ch. March 17, 2006).

IV.    CONCLUSION

Based upon the foregoing, it is

ORDERED that Nominal Defendant Janus Capital Group, Inc.'s Motion to Dismiss (ECF No. 29) and the Individual Defendants' Motion to Dismiss (ECF No. 31) are **GRANTED**, and this case is **DISMISSED**.

Dated:  September 26, 2012.

BY THE COURT:


s/ Wiley Y. Daniel
WILEY Y. DANIEL,
CHIEF  UNITED  STATES  DISTRICT  JUDGE